OPINION OF THE COURT
Fuchsberg, J.
This case turns on whether an administrative regulation of the State Commissioner of Social Services, 18 NYCRR 352.19, is in contravention of sections 131-a and 131-i of the Social Services Law because it mandates that income and Social Security taxes withheld from the wages of an employed head of a family in need of a home relief subsidy be regarded as available income only to the extent that it is possible to include them within the strict statutory limitation on the amount of the recipient’s work expenses that are reimbursable.
The commissioner, by confirming a decision of the Westchester County Department of Social Services applying the regulation, indicated that the statutes and the regulation are not in conflict. In this proceeding, brought pursuant to CPLR article 78, Special Term upheld the determination; the Appellate Division affirmed. Petitioner now appeals by leave of this court.
Petitioner, a low-income factory worker residing with his wife and two minor children, applied to the county department for a public assistance supplement. Because he was fully employed, his family was eligible only for home relief, a program totally funded by our State and local governments to provide "minimum level subsistence” to needy individuals and families (see Social Services Law, §§ 157, 158; Matter of Reyes v Dumpson, 40 NY2d 725, 727).
The size of a home relief grant is determined by measuring a family’s available financial resources, including work income, against the "standard of monthly need”, a term of art used to designate the amount which the department deems necessary to supply the family with basic shelter, heat, food, clothing and other needs for everyday living (Social Services Law, § 131-a). In the case before us, the family’s sole resources were the father’s earnings. Recognizing that gross earnings usually exceed what is actually available to an employee, the Legislature provided for "allowing appropriate amounts from *106 his earnings for expenses necessary and incident to his employment”, limiting that allowance, however, to a maximum of $80 per month unless otherwise required by Federal law or regulation (Social Services Law, § 131-i).[1]
Presumably in implementation of this statute, the State Commissioner promulgated regulation 352.19. In pertinent part, it reads:
"(a) The following expenses incident to employment shall be deducted from gross earnings.
"(1) All non-personal work expenses such as union dues, cost of tools, materials, uniforms and other special clothing required for the job, mandatory fees for licenses or permits fixed by law.
"(2) All personal work expenses such as Federal, State and local taxes, social security taxes, group insurance, child care, meals and transportation.”
Acting under section 131-i, but applying regulation 352.19, the county department totaled petitioner’s monthly "work expenditures” at $129.20. Of that sum, $62.65 consisted of mandatory payroll deductions on account of income and Social Security taxes; the rest, $66.55, covered transportation to work, union dues, compulsory disability insurance, a dollar a day for lunch and the like. Neither side questions the accuracy or propriety of any of the items which made up the $129.20. It is also agreed that petitioner’s gross income came to $481 and that $441 represented his family’s "standard of monthly need”. Applying the regulation, the county department reduced the $129.20 figure to the statutory $80 ceiling. It then deducted the $80 from the gross earnings of $481, leaving an "available income” of $401. That rendered the petitioner eligible for a monthly grant of $40, which supposedly provided his family with the $441 minimum level set forth in the statute (Social Services Law, § 131-a, subd 2).
Petitioner complained that in reality, however, the available earnings before subsidy were only $351.80 ($481 less $129.20) and that, even after adding the $40 subsidy, the family would end up with a shortfall of $49.20 from the standard certified as necessary to sustain his family.
There is no challenge to the statutory $80 ceiling. The *107 petitioner accepts it as a reasonable means of encouraging recipients to control the total amount of their reimbursable expenses (accord Roundtree v Berger, 420 F Supp 282, affd 430 US 912). Rather, he takes issue with the inclusion of withheld income and Social Security payments in the category of "expenses incident to employment”. He also urges that the tax payments ought first to have been deducted from the gross earnings for the purpose of reaching the amount from which the work-related expenses (not to include tax withholdings) were to be deducted in the process of determining true available income.
Furthermore, he asserts that the pursuit of such a course in this case would have disclosed $418.35 ($481 income less $62.65 withholdings = $418.35) to be the sum from which the $66.55 in nontax work-related expenses should have been deducted. The result, he goes on, would have proved the correct amount of available income to be $351.80 ($418.35 less $66.55) and have called for a supplement of $89.20 instead of the $40 arrived at by the respondents, a difference which, though perhaps small to some, obviously could represent a serious hardship to a family at the very limited income level of the one in this case. On this analysis, petitioner’s position is that regulation 352.19, by compelling serious distortion instead of reasonable evaluation in the denomination of what is "available” to meet the "standard of monthly need”, frustrates the intent of subdivision 2 of section 131-a of the Social Services Law.[2]
In appraising that analysis, we first note that section 131-i of the Social Services Law is silent on the items to be budgeted as "expenses necessary and incident to * * * employment.” It does not specifically list allowable deductions from earnings, nor does it expressly define them (compare Social Services Law, § 366, subd 2, par [a]).
Under such circumstances, it is appropriate to examine the intention of the Legislature, if ascertainable (Williams v Williams, 23 NY2d 592, 598). In doing so, we "look to the entire statute, its legislative history and the statutes of which it is made a part” (Rankin v Shanker, 23 NY2d 111, 114).
*108 The legislative history of section 131-i of the Social Services Law strongly suggests that the statutory allowance was not intended to include tax withholding as a work expense. It discloses that, when the legislation was still under consideration, the State Executive Department submitted a memorandum in which it set forth a twofold purpose: "The bill removes any potential incentive for persons who are working to voluntarily end their employment or reduce their earnings without good cause in order to receive or increase their welfare payments. It also subjects the allowances for work expenses to a reasonable maximum limit” (1971 McKinney’s Session Laws of NY, p 2511). We note too that, on approving the bill, the Governor also emphasized that the statute was "designed to provide increased opportunities for gainful employment to persons who are presently dependent upon the welfare system and to deter gainfully employed persons from leaving their jobs in order to obtain public assistance” (id., pp 2636-2637).
The first of these purposes is served by limiting allowance for expenses incident to employment, such as transportation, meals and uniforms. A recipient, hopefully, will be induced to economize in incurring reimbursable expenses by taking such measures as having his lunch prepared at home or joining a car pool, matters over which he can exercise direct control.
But he cannot control the amount of taxes withheld except perhaps by reducing the extent of his employment and, with it, the amount of his wages. When taxes are taken from a home relief recipient’s wages at the source they might just as well have never been earned by him at all insofar as his ability to meet his immediate need to feed, house or clothe his family is concerned. Blindness to that fact can serve but to sap a recipient’s incentive to work and so tends to operate at cross-purposes to the legislative intent.[3] This problem is not obviated by subsequent refund of taxes withheld from wages. Recipients of public welfare are required to report the receipt of tax refunds, which are then either retained by the agency or, when received, are required to be applied by recipients to *109 eliminate or reduce their need for subsistence (see 18 NYCRR 352.23; Administrative Letter No. 75 ADM-35).
There can have been few motivations as paramount to the sponsors of the statutes before us as that suggested by the quoted expressions of legislative intent that the marginally compensated worker not be discouraged in his search for self-sufficiency. Among other things, the alternative often is the personal and vocational demoralization that ensues when one is unable to provide for one’s family. Farthest from the purposes of the statutory enactments is the fashioning of procedures which would put a premium on less work by rewarding it with a fuller subsidy. Moreover, clearly the public interest in returning people from the ranks of the unemployed and, once that is accomplished, in keeping them fully employed, is a strong one.
These considerations but reinforce our view that the statutory scheme is thwarted when withheld income and Social Security taxes, in whole or in part, are not regarded either as reimbursable work expenses or as unavailable to meet the current needs of home relief recipients in the allotment of subsidies necessary to raise their available income to the applicable standards of need.
Respondents nevertheless argue that the construction given a statute by an agency responsible for its administration and a regulation adopted by the agency for that purpose are each entitled to great weight and should be upheld if not irrational or unreasonable (Matter of Howard v Wyman, 28 NY2d 434, 438; cf. Matter of Sauer v Director of Creedmore Pyschiatric Center, 41 NY2d 1023; Matter of Rubin v Levine, 41 NY2d 1024). But, since "[administrative agencies can only promulgate rules to further the implementation of the law * * * [there is] no authority to create a rule out of harmony with the statute” (Matter of Jones v Berman, 37 NY2d 42, 53).
The following language from Judge Gabrielli’s recent opinion in Matter of Dumbleton v Reed (40 NY2d 586), a case involving the Federally funded Medicaid program, underscores the fact that the "rule” in our case is not consonant with the statutes before us (p 588): "It cannot be seriously argued that FICA taxes are income 'actually available’ to an applicant. Only in the remote sense that an applicant may possibly receive Social Security benefits, if he on some future date qualifies for them, may he recoup some of these deductions— in contrast with the present need of medical assistance for his *110 family. Social Security taxes are manifestly different from life insurance premiums or contributions to pension funds and retirement plans where an individual himself makes the economic decision to allocate a portion of the income he receives for such purposes. With respect to FICA taxes, there is no individual choice and one never exercises dominion or control over the funds deducted. Indeed, the Internal Revenue Code requires an employer to withhold FICA taxes directly from wages (US Code, tit 26, § 3102), and he is subject to personal liability and criminal sanction for failure to do so (see US Code, tit 26, §§ 7501, 6672, 7202)”.[4]
In the decisive point it makes, there is little, if any, meaningful distinction between the case now before us and Dumbleton; respondents tender none in their brief. The statute involved there, section 366 of the Social Services Law, parallels section 131-a of the Social Services Law.
For all these reasons, we conclude that 18 NYCRR 352.19, to the extent that it includes payroll withholding tax deductions within the $80 limitation contained in section 131-i of the Social Services Law, is invalid. It follows that the order of the Appellate Division should be reversed and the matter remitted to the Supreme Court, Westchester County, with directions to remand for further proceedings in accordance with this opinion.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order reversed, with costs, and the matter remitted to Supreme Court, Westchester County, with directions to remand to the State Department of Social Services for further proceedings in accordance with the opinion herein.

. Regardless of the extent of its financial need, an intact family with a fully employed father is not eligible for Federal assistance (US Code, tit 42, § 607). Federal laws and regulations are, therefore, not applicable to this case.

. Respondent raised several constitutional challenges to the regulation and the statutes as interpreted by respondent in the courts below. We necessarily rejected these contentions when we dismissed his appeal taken as of right upon the ground that no substantial constitutional question was directly involved (40 NY2d 989) and he has now abandoned them in this court.

. Interestingly, in a situation involving a not dissimilar unavailability of income, the department itself recognizes that an amount deducted from earnings for garnishment, wage assignment or "other cash income [which] is unavailable to the applicant or recipient * * * shall not be applied against need until and unless the agency can secure a release from such restriction” (18 NYCRR 352.17 [b] [4]).

. State law also mandates the withholding of State income taxes (Tax Law, § 366).