OPINION OF THE COURT
Leonard A. Weiss, J.
I. INTRODUCTORY QUESTIONS AND BACKGROUND
Is a CPLR article 78 proceeding brought by the City of New York and officials representing the Human Resource Administration and Finance Administration of that city, (City or petitioners) against the New York State Comptroller (State or respondents) the proper legal proceeding by which to: (a) challenge the New York State Department of Social Services Regulation, 18 NYCRR 381.9 as invalid; (b) order the State to restore in full to the City two disallowances from State welfare reimbursement checks to the City in the approximate sums of $22 million and $11 million representing State over-payments to the City for aid to dependent children (ADC) claims paid by the City between March, 1973 and February, 1976; (c) order the State, pursuant to section 153 of the Social Services Law: (1) to pass on to the City the sum of $33.7 million of Federal funds, received, or to be received, by the State from the Federal Government for reimbursement of City, vendor/restricted welfare payments to families with dependent children (AFDC) during the period from July, 1975 to December, 1976; (2) to pay the City the sum of $16.85 million of State funds as the mandated State 25% reimbursement share of these AFDC payments; (3) to pay to the City the sum of $13.85 million in State funds as the mandated State 50% reimbursement share of City vendor/restricted welfare payments on behalf of recipients of aid to families with dependent children during the period from March, 1973 to February, 1976 for which there was no Federal financial participation?
Petitioners, the City of New York, Blanche Bernstein (Administrator/Commissioner, Human Resources Administration of the City of New York) and Harry S. Tishelman (New York City Commissioner of Finance) commenced this CPLR article *376 78 proceeding on October 13, 1978. The proceeding arises from the City’s claim for reimbursement from the State for moneys petitioners paid under the ADC program to eligibile recipients in New York City between February, 1973 and February, 1976. Between these dates the City alleges it made claim to the State for reimbursement of $95,080,201 in vendor/restricted AFDC payments, and the State claims that in the same period petitioners claimed reimbursement from the State for $99,412,549.73 in vendor/restricted payments.
The dispute arises because following a State audit report published in 1975, the State determined that the City had improperly submitted claims to the State for reimbursement limits set forth in State Social Services Department regulations and directives. The State alleges that the technique employed by the City was to "rollover” claims for wholly nonreimbursable limits set by the State for each month into a claim for Federal nonparticipatory (but State participatory) reimbursement. The State also alleges that improper claims submitted by the City resulted in the City’s receiving excess reimbursement from the State for AFDC payments. The State began recouping the amount which it believed had been overpaid, by deducting these sums from a series of welfare advance checks it issued to the City. The City initiated this proceeding to stop the State recoupment process initiated by challenging: (1) State Social Services Department regulation 18 NYCRR 381.9 which purports to limit the share of AFDC payments reimbursable by the State; (2) the State’s conclusion that the excess vendor/restricted payments made by the City are not 50% reimbursable by the State under the AFDC or Home Relief Program; (3) the method the State used to calculate the alleged excess reimbursement it paid the City— (i) sums of money[1] the State has received or is entitled to receive from the Federal Government for reimbursement of City AFDC payments (the State refuses to make claim for these Federal funds until the City refunds to the State those sums the State believes it overpaid the City improperly as reimbursement for vendor/restricted payments made by the City).
*377 II. parties’ contentions
A. Petitioner/City
The City contends (1) State Social Services Department regulation 18 NYCRR 381.9 is invalid because it purports to limit what the City believes is an absolute requirement that the State reimburse the City 50% for all non-Federally financed vendor/restricted AFDC payments imposed by subdivision 1 of section 153 of the Social Services Law; (2) the State Social Services Department proceeded and threatens to proceed in excess of its statutory authority by disallowing $21,909,701, and threatening to disallow what the City calculates as the $14,631,028 balance the State believes the City improperly claimed by deducting these sums from State reimbursement payments presently due the City. The threatened State disallowances are viewed by the City as "penalties” which are not authorized by subdivision 7 of section 131-a of the Social Services Law; (3) if the State is permitted to deny AFDC reimbursement, then the City is entitled to "home relief’ reimbursement under sections 157 et seq. of the Social Services Law and 18 NYCRR 610.1; (4) if contentions (1) through (3) are not accepted by the court, the City then urges that the State has made an arbitrary and capricious choice of the formula it used to calculate excess vendor/restricted payments; and (5) the State has acted arbitrarily, capriciously, and illegally in failing to (a) claim and/or pass on to the City $33.7 million of Federal funds the State has received or is entitled to receive under the 1977 Federal forgiveness legislation described in this decision (n 1, infra).
B. Respondents/State
The State interposes the following affirmative defenses: (1) the court lacks subject matter jurisdiction because (a) the State has not, by express statute, waived its immunity to suit by the City and this proceeding against State officials is equivalent to an action against the State itself (maintainable only in the Court of Claims), and (b) CPLR 7806 prevents this court from awarding the City the money damages it seeks in its statement: "Any restitution or damages granted to the petitioner must be incidental to the primary relief sought by petitioner, and must be such as he might otherwise recover on the same set of facts in a separate action or proceeding suable in the supreme court against the same body or officer in its or his official capacity.” (Emphasis added.) Respondents urge that the money damages sought by petitioners are the primary *378 relief bringing these proceedings within the prohibition of CPLR 7806; (2) there is another action pending involving the same parties and the subject matter[2] in the Court of Claims evidence by petitioners’ notice of intentions to file claim dated December 13, 1978 and filed pursuant to subdivision 4 of section 10 of the Court of Claims Act.
III. DECISION
A. Standing and Jurisdiction
(1) JURISDICTION TO RULE ON THE VALIDITY OF A REGULATION
The Attorney-General of New York State offers a variety of cases from 1893 (Stone v State of New York, 138 NY 124, 130) to 1961 Mathewson v New York State Thruway Auth., 9 NY2d 788) suggesting that this court does not have jurisdiction to entertain a suit by a municipality challenging the validity of a State administrative agency’s regulation as inconsistent with a statute.
The court has jurisdiction to entertain this action under CPLR 3001 or CPLR 7803 (subd 3) (see, e.g., Erie County v Whalen, 44 NY2d 817 [where by a vote of 6 to 1 the Court of Appeals affirmed an Appellate Division, Third Department 3-to-2 decision (57 AD2d 281), which held that Special Term in a CPLR article 78 proceeding has CPLR 3001 jurisdiction to declare an administrative regulation (10 NYCRR 40.11 [1]) issued by the New York State Health Department Commissioner invalid because the regulation is not in harmony with a statute (Public Health Law, § 605)]; Matter of Harbolic v Berger, 43 NY2d 102 [where the Court of Appeals in a unanimous decision reversed the Appellate Division, Second Department and held State Social Services Department regulation 18 NYCRR 352.19 invalid as inconsistent with section 131-i of the Social Services Law]; Matter of Bernstein v Toia, 43 NY2d 437 [where in a 5-to-2 decision the court upheld State Social Services Department regulation 18 NYCRR 352.3 (a) as consistent with section 131-a of the Social Services Law]; and Matter of Jones v Berman, 37 NY2d 42, 51 [where by a unanimous decision the Court of Appeals modified the Appellate Division, Third Department decision of Domine v Schreck, 44 AD2d 98, an article 78 proceeding, and held New York State Social Services Department Regulation 18 NYCRR 372.2 *379 invalid because it conflicted with section 350-j of the Social Services Law].)
The court disagrees with the State’s contentions. In passing, the court observes (1) that CPLR 103 (subd [c]) provides that the court may treat this as a declaratory judgment action, notwithstanding the form in which the proceeding was brought; (2) that petitioners’ standing can be grounded either in their status as officials of a municipality adversely affected by State action or as taxpayers (cf. Boryszewski v Brydges, 37 NY2d 361), and (3) that the courts not only have jurisdiction to determine if administrative regulations are consistent with státutes but on occasion have been asked to determine whether the statutes themselves are invalid (see, e.g., Matter of Lee v Smith, 43 NY2d 453 [declaring subdivision (a) of section 158 of the Social Services Law unconstitutional as violative of the equal protection guarantees of the State and Federal Constitutions as well as article XVII of the State Constitution, requiring the State to provide for the aid, care, and support of the needy]).
(2) JURISDICTION TO AWARD MONETARY DAMAGES
The Attorney-General suggests that this court does not have jurisdiction to award monetary damages because of the prohibition in CPLR 7806 and refers the court to Matter of Schwab v Bowen (41 NY2d 907, 908); Friedman v State (24 NY2d 528, 536); Haebler v Myers (132 NY 363); and, the claimed raison d’etre for CPLR 7806 — Matter of Karaffa v Simon (29 Misc 2d 219, revd on other grounds 14 AD2d 978), among other authorities.
Whether this court has jurisdiction to award monetary damages in this proceeding has no bearing on the standing or jurisdictional questions already resolved in favor of petitioners. Certainly, the presence or absence of jurisdiction to award money damages does not, as the State suggests, provide a basis for dismissal of the entire amended petition. Having thus held, the court will attempt to. determine whether there is any legal basis for the relief sought by petitioners as summarized in this decision parts 1(a) through 1(c) before considering its jurisdiction to award monetary damages. The court does this because the absence of legal basis for the relief requested by petitioners will make any question of monetary damages moot.
*380 B. Propriety of State Disallowing Reimbursement to the City for Vendor/Restricted Payments
The City’s multipronged attack on the State’s disallowance of reimbursement to the City for excess vendor/restricted payments may be summarized as follows:
1. The State Department of Social Services acted without statutory authority in establishing limitations on reimbursement in 18 NYCRR 381.1, and in recouping from the City reimbursements the State made to the City for vendor/restricted payments in excess of the limits established in 18 NYCRR 381.9.
2. If the State Social Services Department did act with statutory authority as stated in 1 above, then it acted contrary to its own regulation 18 NYCRR 610.1 by not classifying the vendor/restricted payments for purposes of State reimbursement as payments to a home relief recipient.
3. If contentions 1 and 2 are without merit, it follows that the amount the State over-reimbursed the City is "overstated by about 15% due to the incorrect State calculation” resulting from the State’s arbitrarily and capriciously choosing — (a) a formula which required calculating the average money and restricted payments and multiplying those numbers by the number of persons in excess of 10%, rather than by computing the total amount of actual assistance payments to AFDC recipients in excess of the 10%, and (b) a "district by district” formula which results in a larger over-reimbursement figure, than if the State used a "statewide” formula.
4. Regardless of the determination on contentions (1) through (3) above, the State has acted without statutory authority in failing to either claim or pay the City money available from the Federal Government to reimburse the City for vendor/restricted payments it made in excess of the amounts reimbursable by the State under 18 NYCRR 381.9. In evaluating petitioner’s claims that the State lacks statutory authority to limit reimbursement to a local social services district, the court begins with section 153 of the Social Services Law (reimbursement and advances by the State) which says, in relevant part:
"1. Expenditures made by social services districts, cities and towns for public assistance and care and its administration, pursuant to this chapter, shall, if approved by the department, be subject to reimbursement by the state, in accordance with the regulations of the department, as follows:
*381 "There shall be paid to each such district, city or town
"a. the amount of federal funds, if any, properly received or to be received on account of such expenditures * * *
"(d) fifty percentum of the amount expended for public assistance and care for local charges, after first deducting therefrom any federal funds properly received or to be received on account thereof * * *
"5. In the event the state elects to claim and receive federal aid payments in accordance with the alternative formula authorized by the provisions of section eleven hundred eighteen of the social security act, for expenditures made under the state’s approved plan for aid to dependent children, a social services district shall, notwithstanding such election, be entitled to receive a state reimbursement, in accordance with and to the extent authorized by subdivision one, for its approved monthly expenditures for aid to dependent children, the amount it would have been entitled to receive if such election had not been made, until the month the amount it would be entitled to receive as state reimbursement for its approved expenditures for such program of assistance for such month, as a result of such election, is equal to or greater than such district would have been entitled to receive therefor if such election had not been made by the state, any inconsistent provision of law notwithstanding.
"6. a. Claims for state reimbursement shall be made in such form and manner and at such times and for such periods as the department shall determine. * * *
"d. The department is authorized in its discretion to make advances to public welfare districts and to cities and towns in anticipation of the state reimbursement provided for in this section. ” (Emphasis supplied throughout.)
The surface ambiguity of this statute in simultaneously directing 50% reimbursement by the State in paragraph (d) of subdivision 1 and giving the Social Services Department apparent authority to promulgate regulations to implement the section in subdivision l’s preamble poses an interpretive problem. The actual question posed by petitioners is: Does the State Social Services Department have the authority to promulgate a regulation which has the effect of limiting what appears to be mandatory language in section 153 (subd 1, par [d]) of the Social Services Law requiring the State to reimburse a locality 50% of the amount the locality expends for public assistance "after first deducting therefrom any federal funds properly received or to be received on account thereof’.
*382 Interpretive problems are perhaps best resolved by identifying the appropriate standard of review, and then searching to find statutory language which provides a clue as to what the Legislature intended by the language.
The standard to be applied in this case was stated by Associate Judge Fuchsberg of the Court of Appeals in Matter of Harbolic v Berger (43 NY2d 102, 109, supra) in summarizing the Attorney-General’s contentions as follows: "Respondents nevertheless argue that the construction given a statute by an agency responsible for its administration and a regulation adopted by the agency for that purpose are each entitled to great weight and should be upheld if not irrational or unreasonable (Matter of Howard v Wyman, 28 NY2d 434, 438; cf. Matter of Sauer v Director of Creedmore Psychiatric Center, 41 NY2d 1023; Matter of Rubin v Levine, 41 NY2d 1024). But, since '[administrative agencies can only promulgate rules to further the implementation of the law * * * [there is] no authority to create a rule out of harmony with the statute’ (Matter of Jones v Berman, 37 NY2d 42, 53).”
If the regulation is out of harmony with the statute, it must fall, notwithstanding, the great weight which attaches to the regulation by virtue of its being adopted by an agency charged with its promulgation. See, also, Associate Judge Jones’ opinion in Matter of Bernstein v Toia 43 NY2d 437, 448, supra).
The regulation under attack here is 18 NYCRR 381.9 which says:
"Limitations on reimbursement.
"(a) Reimbursement in ADC. Federal and State reimbursement may be claimed on all eligible grants of assistance in ADC during a month, subject to the following limitation: Federal and State reimbursement for assistance granted to individuals receiving restricted payments or indirect (vendor) assistance in a month shall be limited to 20 percent of the number of persons in cases that receive Federal-participating unrestricted cash payments only, plus the unduplicated number of children for whom ADC-FC payments were made during the month. In computing the 20 percent limitation, the following payments shall not be considered:
"(1) indirect or vendor payments for goods or services which are required under department regulations to be provided as a purchase of service or ADC foster care; and
*383 "(2) protective or vendor payments made on behalf of enrollees in the work incentive program because of their refusal without good cause to participate in such program or to accept a bona fide offer of employment in which they are able to engage; and
"(3) protective payments made on behalf of a child because the relative with whom the child is living is found to be ineligible because of the failure of the relative to comply with the provisions of section 402(a) (26) of the Federal Social Security Act.
"(b) Reimbursement in HR. State reimbursement may be claimed on all eligible grants of assistance.
"Historical Note Sec. filed June 3, 1970; renum. 381.8, new added by renum. and amd. 381.10, filed Jan. 30, 1976; amd. filed June 2, 1978 eff. June 2, 1978.”
Clearly by this regulation the Social Services Department attempts to limit the 50% reimbursement provision in section 153 (subd 1, par [d]) of the Social Services Law. The court’s mission now becomes to find the státute, if any, which authorizes the Commissioner of Social Services to limit the per centum of State reimbursement established by statute.
The court does not believe that this language in subdivision 1 of section 153 of the Social Services Law ("shall, if approved by the department, be subject to reimbursement by the state, in accordance with the regulations of the department”) authorizes the Social Services Commissioner to change the legislative direction ("There shall be paid to each district, city or town * * * fifty percentum of the amount expended for public assistance and care for local charges, after first deducting therefrom any federal funds properly received or to be received on account thereof’). The Social Services Department regulations were apparently intended to be of a ministerial nature and there is no indication in section 153 of the Social Services Law that the Legislature intended to give the commissioner the power to alter the reimbursement formula set forth in the statute. This conclusion is further reinforced by section 153 (subd 6, pars a, d) of the Social Services Law which gives the Social Services Department discretion to determine the "form and manner” of "claims for state reimbursement” but directs the department to look to "the state reimbursement provided for in this section” in exercising that discretion. (Emphasis supplied.)
*384 The courts are apparently very sensitive to the scope of authority provided a State commissioner by the Legislature, and perhaps rightfully so, given that a commissioner is appointed by the Governor and there is no guarantee that the Governor will use any objective measure to insure that a commissioner has even basic operating knowledge of the subject matter which his department is charged with regulating. Illustrative of this sensitivity is Erie County v Whalen (57 AD2d 281, affd 44 NY2d 817, 818, supra) where the Court of Appeals affirmed the Appellate Division Third Department’s invalidation of 10 NYCRR 40.11 (1) saying: "the Legislature’s adoption of the phrase 'expenses of personal service’ plainly indicated an intention to cover more than just the salaries of personnel and must be realistically interpreted to include the fringe benefits at issue here; that, reinforcing this view was the fact that the Legislature had deleted from the law a provision which had authorized the commissioner to limit the aid to be granted to counties for their public health activities, and that, accordingly, the commissioner exceeded his authority in promulgating the regulation denying reimbursement for those benefits.” (Emphasis added.)
This court takes the view that a commissioner has the power to limit the aid granted to localities if the Legislature expressly and clearly gives him (her) such power. As section 153 of the Social Services Law does not appear to contain the appropriate legislative expression, the court must look to other provisions of the Social Services Law.
The next stopping point in the search to find Legislative authorization for 18 NYCRR 381.9 is subdivision 7 of section 131-a of the Social Services Law as identified by both parties. Subdivision 7 of section 131-a of the Social Services Law states: "Whenever a social services official finds that a recipient of public assistance has failed to fully apply the amount allowed in his grant for shelter to the payment of rent for his housing accomodations, unless rent is being withheld pursuant to law or court order, the social services official shall furnish such recipient’s shelter allowance in the form of direct payments to the owner of such housing accomodations, unless rent is being withheld pursuant to law or court order, the social services official shall furnish such recipient’s shelter allowance in the form of direct payments to the owner of such housing accomodations or his designated agent. With respect to home relief recipients, such payments shall be made with *385 out regard to the total home relief caseload, but with respect to federally aided public assistance categories, the number of cases so subject, when added to the cases subject to other forms of restrictive payments, may not exceed such proportion of the total caseload as may be established by the department to insure full federal ñnancial participation. The payment of shelter allowances pursuant to this subdivision shall be subject to such periodic review as the department shall by regulation prescribe.” (Emphasis added; as amd L 1976, ch 953, § 1; L 1977, ch 77, § 2.)
Petitioners ask — "Whether this section of law can overcome or be read as incorporated into, the express reimbursement section?” (Social Services Law, § 153, subd 1, par [d].) Petitioners answer their own question — "§ 131-a.7 does purportedly deal with vendor/restricted payments”.
Here, the court’s inquiry into the statutory authorization for 18 NYCRR 381.9 ends. It is clear from the emphasized language in subdivision 7 of section 131-a of the Social Services Law), that the Legislature has clearly expressed approval for the Social Services Commissioner to limit State reimbursement to localities for vendor/restricted payments to an amount "established by the department to insure full federal participation.” As this goal is presumably the purpose for 18 NYCRR 381.9 there is statutory authority for the regulation. The limitation on state reimbursement is not, as petitioners contend, a product of the Commissioner of Social Services acting inconsistently with statutory authorization, but rather in furtherance of statutory directive. This being so, petitioners’ attack on 18 NYCRR 381.9 as lacking statutory foundation must fail.
Petitioners suggest that the absence of statutory directive in subdivision 7 of section 131-a of the Social Services Law authorizing the State to recoup overpayments is further reason to hold that the State acted improperly in disallowing sums from welfare advance checks paid to the City. This contention is absolutely without merit given the clear statutory authorization in section 153 (subd 6, par d) of the Social Services Law and section 20 (subd 3, par [f]) of the Social Services Law which gives the department authority: "to promulgate any regulations the commissioner determines are necessary, in accordance with the provisions of section one hundred eleven-b of this chapter, and to withhold or deny state reimbursement, in whole or in part, from or to any *386 social services district, in the event of the failure of any such district to comply with such regulations relating to such district’s organization, administration, management or program.” (Emphasis added.)
Petitioners’ second contention is that the Social Services Department acted inconsistently with its own regulation 18 NYCRR 601.1 by not considering the disallowed vendor/restricted payments for state reimbursement under 18 NYCRR 610.1.
Respondents reply to this second contention by referring to subdivision (a) of section 158 of the Social Services Law which states that a person who shall be eligible for ADC shall be granted ADC and not be eligible for home relief, and Social Services Department regulation 18 NYCRR 381.9 (b) which provides that State reimbursement for home relief "may be claimed on all eligible grants of assistance.” (Emphasis added.)
The court finds there has been promulgated a procedure by which a municipality alleging it has been mistreated by the commissioner may assert a claim to such effect. See 18 NYCRR 601.1, which states:
"Claim for retroactive reimbursement. Preaudit or post-audit disallowance of reimbursement on a grant of ADC may be reclaimed for reimbursement retroactively as HR provided:
"(a) need for assistance of a type included within the definition of HR (Social Services Law, § 157) was definitely established, that is, the recipient would have been eligible for HR at the time the grant was made;
"(b) the district which administered the disallowed grant would have been responsible under subdivisions 2 and 3 of section 69 or section 73 of the Social Services Law for administering HR to the recipient, if the case had been classified as HR at the time the grant was made; and
"(c) the claim for such retroactive HR reimbursement gives complete cross reference to the claim from which the disallowance was deducted.” (Emphasis added.)
Subdivision 1 of section 157 of the State Social Services Law defines home relief (HR), in relevant part, as follows: "Home relief means allowance pursuant to section one hundred thirty-one-a for all support, maintenance and need * * * furnished eligible needy persons in accordance with applicable provisions of law, by a municipal corporation * * * to persons or their dependents in their abode or habitation whenever *387 possible * * * but does not include * * * aid to dependent children” (emphasis added).
Section 158 of the State Social Services Law deals with eligibility for home relief and says, in relevant part: "(a) Any person unable to provide for himself, or who is unable to secure support from a legally responsible relative, who is not receiving needed assistance or care under other provisions of this chapter, or from other sources, shall be eligible for home relief. * * * However, a person who shall be eligible for aid to dependent children according to provisions of title ten of this article shall be granted aid to dependent children and while receiving such aid shall not be eligible for home relief3 (emphasis added).
It does not appear that petitioner City ever availed itself of the procedure in 18 NYCRR 601.1. Accordingly, it could well be found this entire article 78 proceeding is premature. Significantly, the State has argued that notwithstanding petitioners’ failure to claim under 18 NYCRR 601.1, such claim would be rejected. This contention is predicated upon the fact that sections 157 and 158 of the Social Services Law hold ADC and HR funds each to be mutually exclusive. If this be correct, a claim would have to be denied. Petitioner should, if it so elect, commence claim proceedings pursuant to 18 NYCRR 601.1.
Petitioner also contends that the formula chosen by the State to calculate the amount of over-reimbursement paid to the City for vendor/restricted payments made by the City from March, 1973 to February, 1976 resulted in overstatement to the City’s financial detriment.
In support of this contention, petitioners claim the "unfairness” of the formula used to determine the 10% limitation on vendor/restricted payments from 1970 (when the State issued administrative letters 70 PWD31 and 32) to 1976 (when the State issued administrative letter 76-ADM 123) is shown by the change in 1976 to the formula preferred by petitioners. Petitioners suggest that the change in the methods of computing the 10% limitation on Federal participation made in 1976 establishes that the computations of the 10% limitation from 1970 to 1976 were "arbitrary and capricious and inconsistent with both Federal law and State regulations.” Petitioners also suggest that the State’s applying the 10% limitation on a district-by-district instead of on a State-wide basis was arbitrary and capricious because it unfairly resulted in the City’s losing a greater share of Federal and State reimbursement. *388 Respondents refer the court to the Federal regulations governing protective and vendor payments for dependent children (45 CFR 234.60) in replying to petitioners’ third contention.
Petitioners offer no authority and the court’s own research discloses none to support the view that the action of a State agency is arbitrary and capricious merely because the effect of that action is to cause greater monetary loss to a petitioner, than if the State chose an equally legitimate alternative course of action which had a more favorable financial impact on a petitioner. Review of 45 CFR 234.60 (b) (2) reveals that the United States Department of Health, Education and Welfare limits the number of individuals for whom protective or vendor/restricted payments can be made to "10 precent of the number of other AFDC recipients in the State for that month”, and directs that certain classes of persons are to be excluded from the category "AFDC recipients in the State.” There is nothing in the Federal regulations, and petitioners offer nothing in State statute or regulations, to show that the formula used by the State to compute the 10% reimbursement limitation was contrary to law or regulation, irrational or unreasonable. The court does not believe petitioners have overcome the presumption of validity which attaches to an agency’s acts in implementing a statute it is authorized to administer merely by pointing to the fact that the State agency’s choice of formula was different at another time, or that use of another formula would have a more favorable financial impact on petitioners. Because the State is not directed to make the calculation of the 10% limit on reimbursement for vendor/restricted payments in a specific way, and is expressly given the choice to apply the 10% limitation on a district-by-district or State-wide basis by this language from 45 CFR 234.60 (b) (2) (ii): "The State may decide whether the same percentage limitation is applied in each local administrative subdivision or it may establish a method of assuring that the number of recipients for whom matchable payments are made does not exceed the limitation for the State as a whole. (Emphasis added.)” The petitioners’ dual challenges to the State formula based only on its unfairness to the City are legally without merit.
Petitioners’ final contention is that respondents acted without statutory authority by refusing to pay that portion of Federal funds (and State matching funds) which constitute the City’s share of funds made available to the State by a 1977 *389 Federal amendment (US Code Cong & Admin News, 1977, vol 1, p 1354). Respondents reply to this contention simply by stating that the State Social Services Commissioner is "unwilling to approve” the payment of Federal and/or State funds (presumably pursuant to subdivision 1 of section 153 of the Social Services Law) "as long as petitioners retain any portion of the $49, 651, 519.34 to which they are not entitled.”
This issue raises two, questions, to wit — (1) Does the State Commissioner of Social Services have authority to not claim or withhold Federal reimbursement to a city made available by express Federal legislation? — and, (2) Does the State Commissioner of Social Services have authority to withhold the State matching share of reimbursement which accompanies the Federal share?
To answer these questions, the court refers to its analysis of section 153 (subds 1, 6, par d), subdivision 7 of section 131-a and section 20 (subd 3, par [f]) of the Social Services Law in this decision. From that analysis, it is clear that the State can withhold State reimbursement for noncompliance with Stat,e regulations under section 20 (subd 3, par [f]) of the Social Services Law. Neither that analysis nor respondents’ reply discloses any authority under which the State may refuse to make claim for any Federal reimbursement to a city for noncompliance with State regulations. Furthermore, it appears to the court that section 153 (subd 1, par a) of the Social Services Law requires the State to claim and pay "federal funds” to a city as reimbursement when the Federal Government makes such funds available.
Applying these principles to this case, the court holds (1) the respondents are required by section 153 (subd 1, par a) of the Social Services Law to claim and pay the City that portion of the Federal money which represents the City’s share of retroactive reimbursement made available by the Federal Government legislating forgiveness of its disallowance for the period July, 1975 through December, 1976 ($33.7 million according to the letter dated October 13, 1978 from the Governor’s secretary to the City’s Mayor), and (a) the respondents are free to withhold the State matching reimbursement from its own funds ($16.8 million) pursuant to authority given them by section 20 (subd 3, par [f]) of the Social Services Law.
C. Summary
For the reasons stated above, the court (1) grants petitioners the right to make claim under 18 NYCRR 601.1 within 20 *390 days following service of the order upon this decision, (2) directs respondents to claim and pay petitioners that amount of the Federal funds made available by the 1977 Federal amendment (US Code Cong & Admin News, 1977, vol 1, p 1354) as is determined to be the City’s share of the retroactive reimbursement. Any dispute concerning the amount of Federal funds representing the City’s share is hereby transferred to the Court of Claims for resolution, and (3) denies all other requests for relief by either party.

. These sums the State is entitled to receive under Federal "forgiveness” legislation (US Code Cong & Admin News, 1977, vol 1, p 1354) a 1977 Federal amendment which voided disallowances for all moneys the State claimed in excess of the 10% ceiling on vendor/restricted payments during the period from January, 1968 to April, 1977.

. The petitioners’ notice of claim dated December 13, 1978 seeks to recover the $11 million State disallowance made on or about June 15, 1968, and says that a separate claim will be made to recover the $22 million State disallowance made in 1976.