OPINION OF THE COURT
Margaret Taylor, J.
Petitioner in this article 78 proceeding is a 20-year-old full-time college student whose public assistance risks being suspended. He got caught in the cracks between the Social Services Law and the implementing regulations with a result that is completely inconsistent both with the law and the Constitution of this State.
Petitioner was 19 years old when in December, 1979 his father stopped making the court-ordered child support payments for him and refused to let petitioner live at home. Thus, involuntarily emancipated, petitioner sought support from home relief public assistance. In January, 1980 he enrolled in Queensboro Community College as a *601 full-time matriculated student in order to eventually further emancipate himself from public assistance.
Almost immediately, respondent assigned petitioner Freedman to begin working as a messenger aide in the Manhattan offices of the Department of Social Services. This work assignment of 37 hours every two weeks seemed irreconcilable with his liberal arts course schedule that required attendance Monday through Friday, 10:00 a.m. to 3:00 p.m. Petitioner went to his proposed employer on Friday, January 25, but was informed that rescheduling was impossible. Petitioner’s attendance at school on January 28 and his failure to report to his public works project (PWP) assignment on that date triggered the respondent’s February 28, 1980 notice of intent to discontinue public assistance and the instant proceedings appealing that intent.
Petitioner’s entitlement to continued public assistance turns on whether or not he is an “employable person” who is required to fill any PWP assignment given to him. (Social Services Law, § 164.) All home relief recipients over the age of 16 are presumed employable unless “rendered unable to work by * * * full time attendance at school in the case of a person under the age of twenty-one years”. (Social Services Law, § 131, subd 5.) Petitioner’s woes emanate from the State commissioner’s regulation implementing this statutory provision. The pertinent sections of 18 NYCRR 385.1 provide: “(a) Each ADC and HR applicant or recipient shall be determined employable unless such person is * * * (3) a dependent child who has not reached his twenty-first birthday, and is * * * regularly attending school full-time” (emphasis added).
If “dependent child” retained its ordinary meaning, petitioner would surely be included under the regulation’s protection for petitioner is without independent or external means of support. However, a narrower definition seems to have been adopted, inasmuch as “dependent child” is understood by the commissioner to refer only to a child eligible for Aid to Dependent Children under 18 NYCRR 369.2 (f), to wit, a child living with a parent or relative. Thus, petitioner is excluded under a literal reading of this regulatory scheme because he is living on his *602 own and receiving public assistance in his own right as an emancipated minor. If petitioner were living in the home of a parent or relative who, if eligible, would receive aid for petitioner as a dependent, those benefits would not now be in jeopardy. Maurice Freedman would not now be classified as an “employable person”, but rather would continue to receive public support to enable him to finish his studies until reaching age 21.
Under the above regulatory scheme, 18 NYCRR 385.1, respondent’s determination that petitioner is an employable person who has refused employment, subdivision 4 of section 164 of the Social Services Law, and respondent’s proposal to terminate petitioner’s benefits is unimpeachable. Nevertheless, this regulation that excludes children who are not living with relatives from the school exemption from the work programs is on its face, contrary to subdivision 5 of section 131 of the Social Services Law which makes no such exclusion.
Insofar as this regulation purporting to implement the Social Services Law actually restricts the statute’s scope by adding a requirement not found in the statute, the promulgation of that regulation was beyond the commissioner’s scope of authority. (Matter of Harbolic v Berger, 43 NY2d 102, 109; Matter of Jones v Berman, 37 NY2d 42, 53.) Excluding emancipated minors from benefits while they go to school does not appear to be within the contemplation of the social services statute and is inconsistent with the mandate to interpret that law in a “reasonable and humane manner” reflecting the “broad and humanitarian purpose” for which it was enacted. (Matter of Sabot v Lavine, 42 NY2d 1068, 1069.)
There appears to be no basis in law or in reason for distinguishing petitioner from those nonemancipated minors attending school full time who are, under the regulations, deemed unemployable. (Matter of Edge u Sugarman, 66 Mise 2d 713.) This distinction is unsupportable in view of the language contained in subdivision 1 of section 131 of the Social Services Law which mandates that respondents adequately provide for those unable to maintain themselves and that determinations of eligibility be made pursuant to the provisions of the State law.
*603 Petitioner’s plight dramatizes the inequity that has flowed from what can only be understood as an inadvertence drafting. Because 18 NYCRR 385.1 (a) (3) is inconsistent with and restrictive of subdivision 5 of section 131 of the Social Services Law, this court cannot uphold the commissioner’s finding that petitioner is “employable” pursuant to that regulation.
The New York State and Federal Constitutions are violated by the inherent injustice of a regulation that would continue public assistance to full-time minor students who are living with their parents or relatives, but would deny benefits to those living on their own. (NY Const, art I, § 11; US Const, 5th, 14th Arndts.) In New York, “assistance to the needy is not a matter of legislative grace; rather, it is specifically mandated by our Constitution” (Tucker v Toia, 43 NY2d 1, 7; NY Const, art XVII, § 1). No rational basis has been proffered for affording less aid to minors who are living on their own and presumably need more than that aid afforded to minors who presumably need less because they have a parent or relative to provide shelter and some of the minimal amenities of a home for them. Section 385.1 (a) (3) of title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York is thus flagrantly violative of the New York Social Services Law and of the equal protection clauses of the Constitutions of our State and of the Federal Government. In addition, the regulation flies in the face of all good sense and public policy. Another court addressing this exact regulation opined:
“There appears in this case a pattern of inconsistency which appears insoluable. On the one hand, we encourage our youth not to withdraw from society, but rather to finish their education to the limit of their potentials so as to become useful and productive members of the community. On the other, we have public outcry against those who can work but who prefer to ‘cop out’ and live on the dole.
“In the matter at bar, there is a choice between condemning a young person to menial labors or permitting her to ultimately make a productive contribution to society. Petitioner does not appear to be a ‘free loader’ against *604 whom the law was designed to protect, but rather, that type of individual the law was designed to benefit.” (Matter of Edge v Sugarman, 66 Misc 2d 713, 714-715, supra.)
Those reflections and findings are no less apt in the case sub judice judging from the record here presented. The court finds it legally, constitutionally and logically impossible to uphold petitioner’s status as an employable person, simply because he has involuntarily become an emancipated minor and does not live with his parents or relatives. It is manifestly unfair to thus discontinue his public assistance benefits and force him to give up his liberal arts college education in order to accept his PWP assignment as a messenger aide to the Department of Social Services. Accordingly, the petition is granted and this proceeding is remanded to respondent Blum for consideration of petitioner’s appeal of respondent Brezenoff’s determination in accordance with this decision.
The stay ordered by Justice Wallach dated July 18, 1980 is continued until settlement of judgment.