In the Matter of the COUNTY OF ERIE et al., Respondents, v DAVID AXELROD, as Commissioner of the New York State Department of Health, et al., Appellants.

Third Department, May 27, 1982

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General* (*Clifford A. Royael, Shirley Adelson Siegel* and *William J. Kogan* of counsel), for appellants.

*Eugene F. Pigott, Jr., County Attorney* (*Judith Bapst-Bobrowski, Alan P. Gerstman* and *Melissa M. Marr* of counsel), for respondents.

**OPINION OF THE COURT**

KANE, J.

Petitioner Erie County submitted applications to respondent New York State Department of Health (department) for reimbursement of its medical examiner program for the years 1977 through 1980. Such applications were made under the provisions of article 6 of the Public Health Law which sets out guidelines for State reimbursement to counties for certain public health services. The department

denied petitioner's applications for medical examiner expenses because its program was not under the supervision of the local health commissioner as required by the department's regulations (10 NYCRR 40.10 [f]; 42.11 [c]). Although petitioner has a county department of health, its medical examiner program is not included in that department. It is supervised, instead, by the director of the county laboratory.

After denial of the county's application for reimbursement of 1980 medical examiner program expenses, petitioners commenced this proceeding for relief pursuant to CPLR article 78 and for a declaratory judgment pursuant to CPLR 3001. Petitioners sought a determination that the regulations were invalid and reimbursement of the medical examiner program expenses for 1977-1980. Special Term found petitioners' claim for reimbursement for 1977-1979 expenses barred by the Statute of Limitations (CPLR 217). The court, however, granted petitioners' petition for reimbursement of 1980 expenses and declared 10 NYCRR 42.11 (c) invalid.* Respondents appeal that order.

Petitioners claim that the department's regulation (10 NYCRR 40.10 [f]) is invalid because it contradicts the intent of article 6 of the Public Health Law. We agree.

Specifically, petitioners contend that they are entitled to State aid reimbursement of their medical examiner program pursuant to provisions of article 6 of the Public Health Law. Section 605 of that article describes in general the expenditures that are reimbursable and provides in relevant part: "Whenever the board of supervisors of any county shall appropriate or otherwise make funds available and expend moneys * * * for the purpose of defraying the expenses of such county in any public enterprise or activity *for the improvement of the public health, or any public health work undertaken by such county* * * * within limits to be prescribed by the commissioner, such county shall receive state aid in the manner and subject to the conditions prescribed in this article unless state aid is otherwise specifically provided for any such purpose by

---

* Although Special Term's decision and judgment specify that 10 NYCRR 42.11 (c) was being declared invalid, it is obvious from the court's reasoning that it actually invalided 10 NYCRR 40.10 (f).

this chapter or any other law" (emphasis added). The respondent Commissioner of Health (commissioner) has the duty to "formulate standards of construction, equipment, service, administration and work" which must be met in order to obtain State aid (Public Health Law, §§ 605, 609). In implementing article 6, the commissioner has determined that expenses of medical examiner programs such as petitioners are not reimbursable because they are not under the supervision of the county commissioner of health (see 10 NYCRR 40.10 [f]).

The construction given a statute by an agency responsible for its administration and the regulations adopted by the agency for that purpose must be upheld if not irrational or unreasonable (*Matter of Harbolic v Berger,* 43 NY2d 102, 109; *Matter of Howard v Wyman,* 28 NY2d 434, 438). An agency, however, has no authority to create a rule out of harmony with the statute (*Matter of Harbolic v Berger, supra*).

In the present case, respondents make no claim that the subject medical examiner program is not a public health activity as described in section 605 of the Public Health Law. Respondents rely, instead, on section 608 of the Public Health Law in denying petitioners' request for reimbursement. Section 608 provides that counties not organized as county or part-county health districts receive a 50% reimbursement (Public Health Law, § 608, subd 1, par [a]). This section also provides for reimbursement of 75% of the first $100,000 and 50% of any additional money expended "by a county or a part-county department of health" (Public Health Law, § 608, subd 1, par [c]). Respondents in 10 NYCRR 40.10 (f) have construed section 608 to mean that once a county has established a county or part-county department of health, it cannot be reimbursed for its medical examiner program, admittedly a public health activity, since such program is not administered by the county department of health.

Such a construction is irrational and inconsistent with the intent of article 6 of the Public Health Law. Section 605 of the Public Health Law evinces a general purpose to provide State aid for, *inter alia,* "any public health work * * * within limits to be prescribed by the commissioner"

and the legislative history indicates an intent to improve health services throughout the State by providing aid for such purposes (NY Legis Ann, 1946, pp 187-188). Section 608 of the Public Health Law serves only to establish the rate of reimbursement and does not state that once counties have organized a county health department, they will only be reimbursed for public health activities as defined under section 605 if the county health department supervises the activities.

Respondents also denied State aid reimbursement of laboratory services of petitioners' medical examiner program because the program itself was not eligible for State aid reimbursement (see 10 NYCRR 42.11 [c]). However, as discussed above, the regulation (10 NYCRR 40.10 [f]) denying State aid reimbursement to petitioners' medical examiner program is invalid and thus petitioners' program is eligible for reimbursement. Accordingly, the instant reason for denying reimbursement is groundless.

Finally, in their brief, respondents set forth an additional reason for their denial of reimbursement of petitioners' laboratory expenses of the medical examiner program. Respondents assert that such expenses are not reimbursable because they do not meet the requirements of 10 NYCRR 42.10, which provides, in pertinent part:

"State aid will be granted on the cost of laboratory services required for:

"(a) [T]he detection and control of disease * * *

"(b) [T]he maintenance of a safe and healthful environment".

Specifically, respondents claim that because a medical examiner investigates unattended, violent or suspicious deaths (County Law, § 673), the laboratory services rendered in connection with this function do not fall within the above categories. This argument is without merit.

First, the department's regulation only precludes reimbursement of laboratory services of a medical examiner program when the program itself is not eligible for State aid (10 NYCRR 42.11 [c]). Consequently, respondents have placed themselves in an inconsistent position with this argument as presumably they do reimburse laboratory

services of other medical examiner programs. Second, the performance of laboratory services is "a matter of vital concern, affecting the public health" (Public Health Law, § 570). The definition of laboratory includes a facility for the "pathological examination of materials derived from the human body, for the purpose of obtaining information for the diagnosis, prevention, or treatment of disease or the assessment of medical condition" (Public Health Law, § 571, subd 1). Part of the medical examiner's program includes the performance of autopsies and other examinations to determine the cause of deaths (County Law, § 674, subd 3, par [a]). Laboratory services rendered in connection therewith include those functions considered to affect the public health (see Public Health Law, §§ 570, 571, subd 1) and such services are reimbursable (see Public Health Law, § 620, subd 1).

The judgment should be affirmed, with costs.

MAHONEY, P. J., SWEENEY, CASEY and WEISS, JJ., concur.

Judgment affirmed, with costs.