OPINION OF THE COURT
Marquette L. Floyd, J.
Motion by plaintiffs for an order authorizing the establishment of a supplemental needs trust for plaintiff Arvil Samerson; for an order vacating a lien imposed by the Suffolk County Department of Social Services, or in the alternative, deferring the payment of this lien until the termination of the supplemental needs trust established for Arvil Samerson; and for an order allocating $200,000 of the net settlement proceeds in this action to the derivative claim of plaintiff Monica Samerson is decided as follows:
This is a medical malpractice action arising out of the alleged failure of defendants to properly diagnose and treat plaintiff Arvil Samerson when he contracted bacterial meningitis in November 1984. It is also alleged that as a result of defendants’ failure to render proper medical treatment to Arvil Samerson, he suffered a cerebral infarction (stroke) and *231 sustained left-sided paralysis and other neurological sequelae. Ten years after his stroke, plaintiff, now 41 years of age, continues to suffer from serious neurological problems.
Following the selection of a jury, this action was assigned to the undersigned for trial. Before the commencement of opening statements, the parties’ counsel reached a settlement at a conference held in chambers, in the presence of both plaintiffs. The terms of the settlement totalling $1,250,000 were placed on the record and agreed to by all parties.
Based upon the court’s own assessment of plaintiff Arvil Samerson’s present physical and mental abilities as demonstrated at the conference, as well as the medical reports annexed to the moving papers, the court concludes that while Mr. Samerson is physically disabled he possesses the cognitive ability to make a reasoned decision about the terms of aforementioned settlement agreement, as well as the advisability of placing his settlement proceeds in an irrevocable trust. Moreover, the court, aware that plaintiff Arvil Samerson is "disabled” within the purview of the United States Social Security Act, and as a result of that disability, is eligible for and receives government entitlements available under the Federal Medicaid program, recognizes that Mr. Samerson wishes to maintain his eligibility for these entitlements without first dissipating the proceeds afforded him by the settlement agreement.
Pursuant to an amendment to the Federal Medicaid Assistance Program (Medicaid) known as the Omnibus Budget Reconciliation Act of 1993 (42 USC § 1396p [d] [4] [OBRA '93]), the corpus of a trust will not be taken into account in assessing the eligibility for Medicaid of that trust’s beneficiary as long as the trust provides that the State shall receive the trust assets remaining at the recipient/beneficiary’s death up to the amount of all public assistance provided (see, 42 USC § 1396p [d] [4] [A]).
New York State amended its own Social Services Law and EPTL to conform with the amendment to 42 USC § 1396p governing the creation of Medicaid trusts.
Specifically, Social Services Law § 366 (2) (b) (2) (iii) provides, in pertinent part, as follows: "in the case of an applicant or recipient who is disabled, as such term is defined in section 1614(a)(3) of the federal social security act, the [social services] department must not consider as available income or resources, the corpus or income of the following trusts which comply with the provisions of the regulations authorized by clause (iv) of *232 this subparagraph: (A) a trust containing the assets of such a disabled individual which was established for the benefit of the disabled individual while such individual was under sixty-five years of age by a parent, grandparent, legal guardian, or court of competent jurisdiction, if upon the death of such individual the state will receive all amounts remaining in the trust up to the total value of all medical assistance paid on behalf of such individuar’ (emphasis added).
Social Services Law § 366 (2) (b) (2) (iii) thereby precludes local welfare officials from considering as available income or resources, the corpus or income which a disabled party, otherwise eligible for Medicaid, derives from a supplemental needs trust established by a court of competent jurisdiction. Consequently, the proceeds recovered on claims prosecuted by disabled plaintiffs will not affect that person’s eligibility for Medicaid or other government entitlement, if such proceeds are deposited in a supplemental needs trust established in accordance with the provisions of this statute.
Upon due consideration of the papers submitted in support of the instant motion, and upon all prior proceedings in this action, plaintiff Arvil Samerson is authorized to deposit the net proceeds recovered by him in this medical malpractice action into the corpus of a supplemental needs trust established upon the execution of the proposed trust indenture attached to the moving papers, or other such trust indenture, as long as the trust indenture ultimately executed contains a provision to the effect that upon the death of Arvil Samerson the State will receive all amounts remaining to be paid in the trust up to the total value of all medical assistance paid on behalf of Arvil Samerson.
Beyond this, the court declines to approve the specific terms of the trust indenture attached to the moving papers, or any other by which the supplemental needs trust authorized by this order may be established. This court finds that disputes concerning the validity of any of the terms of the proposed supplemental needs trust may not be litigated prior to its establishment and/or the issuance of a determination of the local social services official as contemplated by Social Services Law § 366 (2) (b) (2) (v).
The only opposition to establishment of a supplemental needs trust for the benefit of Arvil Samerson is asserted by the Suffolk County Department of Social Services (SCDSS) which has imposed a lien in accordance with Social Services Law § 104-b in excess of $500,000 against Arvil Samerson to recoup pay *233 ment for medical services rendered him during the more than 10 years which have elapsed since his stroke. Social Services Law § 104-b empowers a local social service agency to establish a lien in personal injury actions brought by a recipient of public assistance (see, Pasciuta v Forbes, 190 AD2d 375 [1993]). The SCDSS contends that pursuant to Social Services Law § 104-b this lien must be satisfied from the proceeds of the within settlement before the establishment of the trust for Mr. Samerson’s benefit. Plaintiffs contend that the lien may be vacated or payment of lien deferred until the termination of the trust.
The court finds no basis to vacate the existing lien. However, this court adopts the reasoning set forth in Link v Town of Smithtown (162 Misc 2d 530 [1994], rearg granted and order resettled 162 Misc 2d 587 [1994]) wherein the court determined that a lien for past medical assistance need not be satisfied prior to the establishment of a supplemental needs trust. The court in Link reasoned that the intent and purpose of OBRA '93 and the State implementing legislation was to allow trusts to be used to supplement the needs of disabled persons without adverse Medicaid consequences, but with the potential for full Medicaid reimbursement (Link v Town of Smithtown, 162 Misc 2d, at 590, supra). Moreover, the court reasoned that in enacting its own legislation the State of New York determined that for the specific situation of disabled persons utilizing conforming supplemental needs trusts, reimbursement of, or payment for pretrust medical assistance should be had in the same manner as posttrust assistance, to wit, from the trust assets remaining on the beneficiary’s death (Link v Town of Smithtown, 162 Misc 2d, at 535, supra). In sum, the court stated: "the specific SNT provision [of Social Services Law § 366 (2) (b) (2) (iii) (A)] requiring reimbursement makes no distinction between past, pretrust medical aid (including that covered by a tort recovery and hence a lien) and posttrust aid. Rather, all medical aid is covered”.
In the case at bar, as in Link (supra), the court determines that such a holding is amply justified by the priority which the County enjoys upon termination of the trust.
Nor does the court find persuasive the argument that a distinction between a lien arising from pretrust medical assistance and a lien arising from posttrust medical assistance must now be recognized as a result of the recent enactment of a social services regulation which requires the satisfaction of existing liens for medical assistance before a supplemental needs trust may be established. Specifically, 18 NYCRR 360-4.5 *234 (b) (5) (ii) provides, in pertinent part, that "[i]n the event that a lien has been imposed pursuant to the provisions of section 104-b or 369 of the Social Services Law upon the funds which are to be used to establish a * * * [supplemental needs trust] * * * on account of MA [medical assistance] provided prior to date the trust is to be established, such lien must be satisfied or otherwise resolved in order for the assets subject to such lien to be disregarded in determining MA [medical assistance] eligibility”.
The court declines to apply the aforementioned regulation in the instant case. It is of course a fundamental principle of administrative law that agencies are possessed only of those powers expressly delegated by the Legislature, together with those powers required by necessary implication. Even when broad rule-making authority has been granted, an agency cannot promulgate rules in contravention of the intention of the Legislature (Matter of Beer Garden v New York State Liq. Auth., 79 NY2d 266 [1992]). In other words, administrative agencies can only promulgate rules to further the implementation of the law as it exists; they have no authority to create a rule out of harmony with the statute (Matter of Jones v Berman, 37 NY2d 42 [1975]; Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588 [1982]; Matter of Harbolic v Berger, 43 NY2d 102 [1977]; Matter of United Home for Aged Hebrews v Axelrod, 201 AD2d 656 [1994]). Thus, in exercising its rule-making authority an administrative agency cannot extend the meaning of the statutory language to apply to situations not intended to be embraced within the statute (Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, supra, 57 NY2d, at 594). An administrative construction which is contrary to or inconsistent with the statute is without legal effect and will be disregarded by the court (see, In re Billings’ Estate, 70 NYS2d 191 [1947] [and cases cited therein]).
The controlling principle in interpreting statutes is the legislative intent (People v White, 73 NY2d 468 [1989], cert denied 493 US 859). In determining the intent of the Legislature, the court "looks” to the entire statute, its legislative history and the statutes of which it is made a part (Matter of Harbolic v Berger, supra, 43 NY2d, at 108).
The court has reviewed two proposed versions of Social Services Law § 366 amended in 1994, both of which contained provisions which would have effectively required the satisfaction of a medical assistance lien imposed in accordance with Social Services Law § 104-b before the establishment of a supplemen *235 tal needs trust. "Yet, neither the original nor amended such provision was included in the legislation as finally passed. Given the specific nature of this provision, particularly as amended, its history and ultimate omission clearly indicate that the issue of prepayment of liens was specifically considered by the Legislature and rejected * * * Such is consistent with the over-all intent of the Federal and State legislation to provide for the supplementation of medical care for the disabled while alive and for reimbursement to the government upon death” (see, Link v Town of Smithtown, supra, 162 Misc 2d, at 536-537).
The failure of the Legislature to include a matter within a particular statute is an indication that its exclusion was intended (Pajak v Pajak, 56 NY2d 394 [1982]). Where, as here, a statute is clear, a court should not attempt to cure an omission in the statute by supplying what it believes should have been put there by the Legislature (Prego v City of New York, 147 AD2d 165 [1989]).
As Social Services Law § 366 contains no provision requiring the payment of an existing lien for medical expenses out of the proceeds of a personal injury action settlement, as a condition precedent to the establishment of a supplemental needs trust, the court must agree with the conclusion that the Legislature intentionally omitted such a requirement in enacting the statute. The court, therefore, has no alternative but to determine that the aforementioned social services regulation requiring the payment of Social Services Law § 104-b liens prior to the establishment of the supplemental needs trust is, in fact, an attempt by the agency to expand the statute and as such must be disregarded.
Finally, the court denies, without prejudice, plaintiffs’ request for an order directing the allocation of $200,000 of the net proceeds of the settlement agreement in this action to the derivative claims of plaintiff Monica Samerson. The stipulation of settlement entered on the record and agreed to by all parties present contained no such provision. Where the parties enter into a stipulation recorded in the minutes of the court, the settlement agreement terminates the claims of parties theretofore made in the action, and the agreement becomes enforceable as a contract binding on the parties (Gaetano Constr. Corp. v Citizens Developers, 175 AD2d 465 [1991]). The settlement agreement may be set aside or modified only upon such grounds as would permit such relief to be granted in a contract matter. Absent such grounds, the agreement must be strictly *236 enforced (Furgang v Epstein, 106 AD2d 609 [1984]). Plaintiffs may not unilaterally alter the terms of the settlement agreement and the court finds no basis to support plaintiffs’ requested modification of that agreement. Plaintiffs must obtain the consent of the defendants to a resettlement of the agreement, or commence a plenary contract action for modification of that agreement.
Accordingly, the court authorizes the establishment of a supplemental needs trust for the benefit of plaintiff Arvil Samerson as long as the trust provides that upon his death the State will receive all amounts remaining in the trust up to the total value of all medical assistance paid on his behalf. The payment of the lien imposed by the SCDSS in accordance with Social Services Law § 104-b is deferred until the trust terminates by virtue of Arvil Samerson’s death. The court declines to permit the alteration of the parties’ settlement agreement, without prejudice.