OPINION OF THE COURT
Frank S. Rossetti, J.
The above conservatorship proceeding and personal injury action were transferred to the undersigned on June 2, 1994 by Justice Daniel F. Luciano of the Suffolk County Supreme Court. The two actions are related since the injuries which are the subject of the latter necessitated the former. A tentative settlement in the amount of $3,475,000 has been reached in the personal injury action and it is proposed that the net proceeds thereof be placed into a supplemental needs trust (SNT) for the benefit of the conservatee.[1] An important issue with respect to said settlement and the proposed SNT concerns a lien of the Suffolk County Department of Social Services (DSS). The lien (which may total upwards of $800,-000) is for payments made by DSS for medical assistance the conservatee has received in the almost 12 years since the automobile accident which caused her subject devastating injuries and her present disabled condition.[2] DSS contends its *532 lien should be paid from the settlement proceeds before the SNT is created, the same as those fees due plaintiff’s attorneys. The conservatee’s temporary guardian argues that payment of the lien is not required now, but rather can be deferred until the end of the trust (i.e., on Ms. Gibson’s death), the same as prospective charges for medical care.
The payment of medical liens in these circumstances is apparently a case of first impression, seemingly because of the recency of the legislation permitting the funding of SNTs from personal injury recoveries. In August 1993, amendments to the Federal Medicaid statute established a new class of SNTs exempt from consideration in determining Medicaid eligibility. These new exempt SNTs are ones containing assets of a disabled recipient and established by the recipient’s parents, legal guardian or a court which provide that the State shall receive the trust assets remaining at the recipient/beneficiary’s death up to the amount of all public medical assistance provided. (See, 42 USC § 1396p [d] [4] [A];[3] cf., 42 USC § 1396a [former (k)].[4]) Prior to that, SNTs established by the beneficiary (or the beneficiary’s spouse) would render the beneficiary ineligible for Federal and State medical assistance.[5] (See, 42 USC § 1396a [former (k)];[6] § 1396p [c] [l];[7] Social Services Law §366 [5] [a], [c];[8] EPTL 7-1.12 [a] [5] [iv]; [c];[9] 7-3.1 [a], [c].[10]) Basically, the establishment of these trusts was considered an improper transfer of what might otherwise be resources available for medical care. (See, 42 USC § 1396p [c] [see, n 7, at 532, *533 supra]; Social Services Law § 366 [5] [a], [c] [see, n 8, at 532, supra]) Under New York case law, the assets of SNTs set up by legal representatives of the beneficiary (such as conservators or guardians) or a court were imputed to the beneficiary and thus such SNTs were also considered proscribed. (See, e.g., Matter of Moretti, 159 Misc 2d 654, 657, supra; Turano, 1992 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 7-3.1, 1994 Pocket Part, at 13.)
As to past medical assistance prior to OBRA '93 (see, n 3, at 532, supra), generally the property of living recipients was not subject to lien, adjustment or recovery (see, 42 USC § 1396p [a], [b];[11] Social Services Law § 369 [2] [a], [b][12]), but liens could be imposed and recoveries had against third parties legally liable for such assistance (see, 42 USC § 1396a [a] [25];[13] Social Services Law §§ 104, 104-b, 369 [2] [c]). It is important to note, however, that a 1993 State amendment to Social Services Law § 104 enacted just prior to OBRA '93 exempted SNTs created by third parties from recovery of past payments under said section, while at the same time specifically retaining the State’s right to such recovery against self-settled trusts. (See, Social Services Law § 104 [3]; EPTL 7-1.12.[14]) The Court of Appeals has held that liens under Social Services Law § 104-b are just another form of remedy for the right of recovery defined under Social Services Law § 104 and thus liens are also limited thereby. (See, Matter of Thurston v Durose, 76 NY2d 683, 686, supra, and case quoted.) This appears logical since it would be anomalous to allow a local government agency to impose a lien in an action where it had no right of recovery in the first place. In any event, the legal effect of this 1993 State amendment was to not only bar recoveries against such third-party trusts, but also liens.
The noted OBRA '93 amendments permitting SNTs as aforesaid (see, 532-533, supra) referred to the need for implementing State legislation (see, Pub L 103-66, § 13611 [e] [3], 107 US Stat 627) and in June of this year such was passed in New York. (See, L 1994, ch 170, §§ 449-455, 564 [57] [a], [b], [d], [f], [g].) However, in changing the law with respect to the eligibility of beneficiaries of SNTs conforming to the new *534 Federal law (see, Social Services Law § 366 [2] [b] [2] [iii] [A];[15] see also, Social Services Law § 366 [5] [a], [d] [3] [ii] [D][16]), the New York amendments also changed the law as to trusts exempt from recovery under Social Services Law § 104 and hence exempt from liens under Social Services Law § 104-b. Both EPTL 7-1.12 and 7-3.1 were amended by said 1994 law to permit such trusts (see, EPTL 7-1.12 [a] [5] [v];[17] 7-3.1 [c][18]), and since the former section defined the noted exemption in Social Services Law § 104 (3) (see, 533, supra), the SNTs now permitted by Social Services Law § 366 and now included in EPTL 7-1.12 are exempt from Social Services Law § 104, and hence section 104-b (see, ibid.).
Admittedly, and as argued by DSS, the Federal OBRA '93 amendments did not make any specific change vis-á-vis SNTs in the Federal Medicaid provisions authorizing liens, but these general provisions did not deal with anything as detailed as the personal injury action liens in Social Services Law § 104-b in the first place (i.e., prior to said Federal OBRA '93 amendments; see, 42 USC § 1396a [a] [25] [see, n 13, at 533, supra]). Rather, the Federal statute speaks only in general terms of requiring State laws to provide for reimbursement from and acquiring rights against legally liable third parties. (See, 42 USC § 1396a [a] [25] [B], [I][19].) It does not tell the States how such reimbursement is to be had or such rights exercised. Here the State of New York has determined that for the specific situation of disabled persons utilizing conforming SNTs, reimbursement of or payment for pretrust medical assistance should be had in the same manner as posttrust assistance, to wit, from the trust assets remaining on the beneficiary’s death (see also, 42 USC § 1396p [a], [b];[20] Social Services Law § 369 [2] [a], [b][21]). In fact, the general Federal third-party provisions (which embrace much more than just personal injury recoveries — see, 42 USC § 1396a [a] [25] [see, n 19, at 534, supra]) should not be read as necessarily controlling the more specific provisions dealing with SNTs for disabled persons (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 238; 97 NY Jur 2d, Statutes, § 184; cf., Matter of Craig, 82 *535 NY2d 388, 392), particularly since said specific provisions can be deemed to be subsequent (see, Abate v Mundt, 25 NY2d 309, 318, affd 403 US 182).[22] It should be noted in this regard that the specific SNT provision requiring reimbursement makes no distinction between past, pretrust medical aid (including that covered by a tort recovery and hence a lien) and posttrust aid. Rather, all medical aid is covered. The New York State Legislature apparently did not believe that lien prepayment was required when it passed its 1994 law (see, 536-537, 537-538, infra) and no argument is made that this State legislation violates Federal law (see, 97 NY Jur 2d, op. cit., §§ 153-155; see also, op. cit, 170).
When the Legislature enacts new legislation, it is presumed to know the law in effect, both statutory and case law. (See, e.g., 97 NY Jur 2d, op. cit., §§ 156, 172, 175.) As above indicated, DSS’s lien is a statutory remedy governed by Social Services Law § 104-b which in turn is governed, defined and limited by the underlying right of recovery established by Social Services Law § 104 (see, 533, supra). As also noted (see, 532-533, supra), in 1993 the New York State Legislature enacted a statute specifically dealing with SNTs (i.e., EPTL 7-1.12) which was specifically exempted from the Social Services Law § 104 right of recovery in both statutes (see, EPTL 7-1.12 [b] [4]; Social Services Law § 104 [3]). Hence, when the Legislature expanded the scope of permissible SNTs under EPTL 7-1.12 in 1994, we believe it proper to find that the Legislature *536 intended to expand the exemption defined thereby to the right in Social Services Law § 104 and, by extension, the remedy in section 104-b. Relevant in this regard is the general rule that statutes are to be interpreted according to their natural and ordinary meaning. (See, Statutes, op. cit., § 94; 97 NY Jur 2d, op. cit., § 108.)
The court is aware of the rule of construction that an amendment of a statute incorporated by reference does not necessarily accomplish an amendment of the incorporating statute. (See, e.g., 97 NY Jur 2d, op. cit, § 25; but see, Statutes, op. cit., § 197, at 368.) However, as with many rules of statutory construction, this general principle is also subject to the general exception that other circumstances evincing a contrary intent can be controlling. (See, 97 NY Jur 2d, op. cit., § 25, n 16; § 101; Statutes, op. cit, § 92 [a].) Here one such circumstance is the history of the 1994 State amendments. (See, Statutes, op. cit., § 125 [a], at 258.) The conservatee’s temporary guardian submitted an original version of the new statute proposed in January of 1994 and an amendment thereof proposed in April 1994. The first provided that there could be no claim for prior medical assistance under Social Services Law §§ 104, 104-b or 369[23] when an otherwise proper SNT was established. The latter proposal amended this provision to require that all prior claims for public assistance under said sections be satisfied before a SNT would be deemed exempt, except for past, present and future medical assistance to disabled persons. However, this last exception was subject to its own exception, i.e., liens under section 104-b had to be satisfied to the extent of personal injury recoveries for past medical expenses. Yet, neither the original nor amended such provision was included in the legislation as finally passed. Given the specific nature of this provision, particularly as amended, its history and ultimate omission clearly indicate that the issue of prepayment of liens was specifically considered by the Legislature and rejected. (See, Statutes, op. cit., § 240; 97 NY Jur 2d, op. cit., § 112.) Such is consistent with the over-all intent of the Federal and State legislation to provide for the supplementation of medical care for the disabled while alive and for reimbursement to the government *537 upon death. (See, Statutes, op. cit., §§ 95, 96; 97 NY Jur 2d, op. cit, §§ 148, 149.)
This construction also avoids potentially unequal results (see, Statutes, op. cit., § 147) since a contrary interpretation could result in otherwise equal settlements or recoveries becoming unequal merely by the passage of time (i.e., a later settlement or recovery would mean a larger lien and hence a smaller net amount for the disabled plaintiff). With past and future medical payments treated the same, plaintiffs would not be pressured to settle early for less and defendants would not have an incentive to delay realistic offers. Also, if liens are required to be paid at the time of settlement or judgment, there might be less incentive to use SNTs in certain situations, to the potential detriment of not only disabled persons, but also the State. For instance, a disabled person who is not institutionalized and is forced to pay a lien up front might be inclined to simply transfer the remaining proceeds to relatives since such a transfer would not generally render such a person ineligible for Medicaid. (See, 42 USC § 1396p [c] [1] [see, n 7, at 532, supra]; Social Services Law § 366 [5] [d] [see, n 16, at 534, supra].) The State would then be unable to obtain reimbursement from such proceeds for subsequent medical assistance. The same loss of potential reimbursement would result if a disabled person did not use a SNT and had the misfortune to die before age 55. (See, 42 USC § 1396p [b] [1] [B] [see, n 20, at 534, supra]; Social Services Law § 369 [2] [b] [i] [B] [see, n 12, at 533, supra].) Thus the noted construction benefits the disabled SNT beneficiary directly and indirectly while still maintaining the potential for full State reimbursement at the beneficiary’s death of all medical care provided.
Due to the newness of the State legislation, full details of any further legislative history are apparently not publicly or easily available. Nonetheless, we believe the indicated preliminary versions of the 1994 law are telling and give clear support to the presumption that the Legislature knew what it was doing when it structured the subject amendments as it did (see also, Farrington v Pinckney, 1 NY2d 74, 82-83). If it wished to require the payment of liens before the establishment of the new SNTs, it could have done so as proposed. It did not, and we therefore believe it proper to view this omission as deliberate and with the intent to treat past payments the same as future ones. (See, e.g., Statutes, op. cit., § 92; 97 NY Jur 2d, op. cit, § 101.) As with the Federal amendment, the reimbursement requirement in the State law *538 specifies that it applies to all payments for medical assistance, not just ones made after a SNT is created. (See, Social Services Law § 366 [2] [b] [2] [iii] [A] [see, n 15, at 534, supra]; see, 534-535, supra.)
Accordingly, the court concludes that the lien at bar need not be paid prior to the establishment of the proposed SNT. Correspondingly, we find a SNT in the best interest of the subject disabled and incapacitated person (see also, Matter of Moretti, 159 Misc 2d 654, 661, supra).

. A SNT is a trust which supplements the needs of a disabled person beyond those provided by government aid programs. (See generally, EPTL 7-1.12 [a] [5].)

. DSS alleges its medical payments totaled about $790,000 as of July 1, 1994, and while presumably a lien under Social Services Law § 104-b extends back only 10 years (see, Social Services Law §§ 104, 104-b; Matter of Thurston v Durose, 76 NY2d 683, 686, and case quoted; Matter of Kappen v D’Elia, 197 AD2d 575), it is unclear from what date the 10-year period runs back from. DSS argues for the date of discovery of the underlying tort cause of action (seemingly by DSS), but inasmuch as the 10-year period has been deemed to run from commencement of an action where such is brought under Social Services Law § 104 (see, Jeacock v Schorb, 265 App Div 147), the analogous act under Social Services Law § 104-b would seem to be the service and filing of a notice of lien (see, Social Services Law § 104-b [2], [3]; cf., Matter of Kappen v D’Elia, supra). In this regard it appears that the 10 years in Social Services Law § 104 refers to the bringing an action language at the beginning of said statute, and that the reference in Social Services Law § 104-b to the total amount of all assistance provided after the injury is a possible maximum, not a preemptive definition of the lien’s coverage. DSS presented no specific evidence as to either its discovery date or said service and filing date and thus it cannot be determined whether all of said *532 $790,000 falls within the proper 10-year period. However, given the court’s ultimate determination herein, a finding with respect to said period or the amount subject to lien is unnecessary.

. Added by the Omnibus Budget Reconciliation Act of 1993 (OBRA '93), Pub L 103-66, § 13611 (b), 107 US Stat 624, 625.

. Repealed by OBRA '93, Pub L 103-66, § 13611 (d) (1) (C), 107 US Stat 626, 627.

. Under Federal law, in a clear case of governmental doublespeak, such trusts were called "medicaid qualifying trusts” (see, 42 USC § 1396a [former (k)] [2], prior to repeal by OBRA '93 [see, n 4, supra]; emphasis added), even though the effect of such a classification was to disqualify the beneficiary from receiving Medicaid. Under State law, such trusts were considered illegal "self-settled” or grantor trusts (see, EPTL 7-3.1 [a]; n 9, infra; Matter of Moretti, 159 Misc 2d 654, 657).

. Prior to repeal by OBRA '93 (see, n 4, supra).

. Prior to amendment by OBRA '93, Pub L 103-66, § 13611 (a), 107 US Stat 622.

. Prior to amendment by L 1994, ch 170, § 450.

. Prior to amendment by L 1994, ch 170, § 453.

. Prior to amendment by L 1994, ch 170, § 454.

. Prior to amendment by OBRA '93, Pub L 103-66, § 13612, 107 US Stat 627.

. Prior to amendment by L 1994, ch 170, § 451 (see also, n 23, infra).

. Prior to amendment by OBRA '93, Pub L 103-66, § 13581 (b) (2); § 13622 (a) (1); (b), (c), 107 US Stat 609, 611, 632.

. As added by L 1993, ch 433, §§ 3, 5, 6.

. As added by L 1994, ch 170, § 449.

. As amended and added by L 1994, ch 170, § 450.

. As amended by L 1994, ch 170, § 453.

. As amended by L 1994, ch 170, § 454.

. As added by OBRA '93 (see, n 13, supra).

. As amended by OBRA '93 (see, n 11, supra).

. As amended by L 1994, ch 170, § 451 (see also, n 23, infra).

. One of the OBRA '93 amendments dealing with third-party liability requires that there be State laws wherein "the State is considered to have acquired the rights of [a recipient] to payment by any other [legally liable third] party” (42 USC 1396a [a] [25] [I]; n 19, supra), but Social Services Law §§ 104 and 104-b seemingly already do that. Also, this part of OBRA '93 was separate from that dealing with SNTs (compare, Pub L 103-66, tit XIII, ch 2, subch B, part II, § 13611 [b], with part III, § 13622 [c]; compare, HR Rep No. 111, 103rd Cong, 1st Sess, tit V, ch 2, subtit B, ch 1, subch A, part 3, § 5111, at 208, with part 4, § 5116 [c], at 210; compare, HR Rep No. 213, 103rd Cong, 1st Sess, tit XIII, ch 2, subch B, part II, at 834, with part III, at 835) and seemingly independent thereof. Thus we do not believe it was intended to be read in opposition to the SNT provisions, particularly in view of the considerations of intent, consistency, fairness and policy relevant to the latter (see, 536-538, infra). The court is aware of the Federal regulation requiring reimbursement to be sought within 60 days after third-party benefits become available (see, 42 CFR 433.139 [d] [2]; see also, 42 CFR 433.139 [c]), but this provision can be harmonized with the SNT provisions in light of said considerations since such benefits put into a SNT do not become available to the local welfare agency pursuant to the latter provisions until the recipient/beneficiary’s death (see, 532-533, supra; 97 NY Jur 2d, op. cit., § 183).

. This last section generally deals with liens and recoveries after a recipient’s death (as well as incorrect payments and recoveries and liens against real property of permanently institutionalized recipients), consistent with Federal law (see, 532-533, 534-535, supra).