OPINION OF THE COURT
Frank S. Rossetti, J.
Motion by petitioner for (a) reargument of its application for enforcement of its lien and (b) resettlement of the court’s order entered thereon. Reargument is granted, but, upon reargument, the court’s prior determination is adhered to, and resettlement is granted, in accordance with the following.
The instant motion relates to the court’s decision and order of August 15, 1994 wherein enforcement of the lien of movant Suffolk County Department of Social Services (DSS) was denied in toto. (See, Matter of Gibson, 162 Misc 2d 530 [Sup Ct, Nassau County, Rossetti, J.].) DSS requests reargument on the grounds: (1) reanalysis of the relationship between Social Services Law §§ 104 and 104-b, and of the decisions interpret *589 ing it (i.e., Matter of Thurston v Durose, 76 NY2d 683; Baker v Sterling, 39 NY2d 397), requires that the lien be enforced in full; and (2) analysis of one of the effective dates of the seminal Federal legislation on supplemental needs trusts (SNTs) (i.e., the Omnibus Budget Reconciliation Act of 1993 [OBRA '93], Pub L 103-66, § 13611 [b], 107 US Stat 624, 625) requires pro rata enforcement of said lien up to said date. Under the first ground, DSS is basically contending that the court misapprehended the law as it relates to Social Services Law § 104-b. Under the second, it is essentially claiming the court overlooked supposedly controlling law. Given these claims of misapplication and overlooking of alleged apposite law, we deem it an appropriate exercise of the court’s discretion to grant reargument. (See generally, 2 Carmody-Wait 2d, NY Prac § 8.75, at 400-401, 403; 2A Weinstein-Korn-Miller, NY Civ Prac ¶ 2221.04, at 22-137 — 22-138.)
Briefly stated, DSS’ first argument runs as follows. Social Services Law § 104 provides a right of recovery for past medical assistance against various forms of property and Social Services Law § 104-b provides an additional lien remedy against one of those forms, to wit, the proceeds of a personal injury action.[1] Prior to the 1993 enactment of Social Services Law § 104 (3), the right of recovery under section 104 extended to trust funds, and while said 1993 amendment exempted third-party SNTs therefrom, it continued the right of recovery against self-settled ones (see, Matter of Gibson, supra, at 533). OBRA '93 then ended recovery against even SNTs funded with a recipient’s assets, but this had no effect on the form of property covered by the Social Services Law § 104-b lien. In other words, while OBRA '93 may have ended section 104 recoveries against the form of property known as SNT assets, it did not affect the right of recovery against the other form of property known as personal injury action proceeds. Therefore, until such proceeds are actually converted to said exempt trust assets, they are not exempt from recovery under Social Services Law § 104 and thus are subject to a lien under Social Services Law § 104-b.
This argument may have facial appeal, but it is essentially a technical, semantical one which ignores the overriding *590 intent and purpose of OBRA '93 and the implementing State legislation. That intent and purpose is to allow trusts to be used to supplement the needs of disabled persons without adverse Medicaid consequences, but with the potential for full Medicaid reimbursement. (See, Matter of Gibson, supra, at 536-537.) DSS’ argument in effect says "yes, you can have such a trust, but no, you cannot have the assets to fund it with.”[2] The practical effect of such a construction is to render the intent to benefit disabled recipients ineffective in many cases (see, n 2, supra) and thereby unreasonably and unequally work injustice. (See, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 143-144, 146-147; 97 NY Jur 2d, Statutes, §§ 185-186, 188-189; see also, Matter of Gibson, supra, at 537.) It may well be that Congress did not specifically consider personal injury actions and liens thereon in enacting the Federal SNT exemption, but there is no doubt the State Legislature did so in developing the implementing State legislation (see, Matter of Gibson, supra). The result of that consideration was the removal of provisions that would have required the satisfaction of liens before the establishment of SNTs (see, supra). As indicated in the original Gibson decision, prior to OBRA '93 the establishment of SNTs was proscribed as an improper transfer of assets, under Federal 42 USC § 1396p (c) and State Social Services Law § 366 (5) (a), (c). (See, Matter of Gibson, supra, at 533.) Both these sections were amended as part of the respective SNT amendments to exempt transfers to SNTs from being Medicaid disqualifying events. (See, 42 USC § 1396p [c] [2] [B] [iv]; Social Services Law § 366 [5] [d] [3] [ii] [D].) It is thus that the establishment of SNTs is specifically made exempt and hence that the transfer of assets which would otherwise be disqualifying is statutorily authorized. By parity of reasoning, the establishment of such a trust by a transfer of assets which would otherwise be subject to a lien is also exempt and statutorily authorized. We therefore find DSS’ first argument contrary to the evidenced legislative intent.
Under this argument DSS also cites Gromalski v County of Nassau (204 AD2d 391 [2d Dept 1994]) for the proposition that *591 parties may not consciously structure a settlement to frustrate a DSS lien. However, that case is factually inapposite since it involved the question of whether the settlement of an infant’s claim (cf., Matter of Thurston v Durose, supra, at 686-687) intentionally allocated damages so as to eliminate or minimize those attributable to medical expenses (cf., Pang v Maimonides Med. Ctr.-Maimonides Hosp., 127 AD2d 641, 642). More importantly, the settlement there preceded the State statute on SNTs (i.e., EPTL 7-1.12), and OBRA '93 and the State implementing legislation (i.e., L 1994, ch 170, §§ 449-454, 564 [57]), and thus, unlike this case, the potential "structuring” there was not specifically authorized by statute. Clearly, a court-ordered transfer to a court-approved and statutorily warranted trust is not an artificial scheme designed to defraud (cf., Pang v Maimonides Med. Ctr.Maimonides Hosp., supra). We therefore find Gromalski unsupportive of DSS’ first argument and immaterial to the application at issue.
DSS’ second argument involves one of the effective dates specified in OBRA '93. The Federal amendment section containing the subject SNT exemption closes with the following effective date provisions:
"(e) effective dates. — (1) The amendments made by this section shall apply, except as provided in this subsection, to payments under [Medicaid] for calendar quarters beginning on or after October 1, 1993, without regard to whether or not final regulations to carry out such amendments have been promulgated by such date.
"(2) The amendments made by this section shall not apply—
"(A) to medical assistance provided for services furnished before October 1, 1993,
"(B) with respect to assets disposed of on or before the date of the enactment of this Act,[3] or
"(C) with respect to trusts established on or before the date of the enactment of this Act.
"(3) In the case of a State plan for medical assistance under [Medicaid] which the Secretary of Health and Human Services determines requires State legislation (other than legislation appropriating funds) in order for the plan to meet the additional requirements imposed by the amendment made by subsection (b), the State plan shall not be regarded as failing *592 to comply with the requirements imposed by such amendment solely on the basis of its failure to meet these additional requirements before the first day of the first calendar quarter beginning after the close of the first regular session of the State legislature that begins after the date of the enactment of this Act.” (Pub L 103-66, § 13611 [e], 107 US Stat 627.)
DSS argues that since the above-quoted subparagraph (2) (A) specifies that the amendments in the subject amending section shall not apply to medical assistance for services furnished before October 1, 1993, the exemption for SNTs in said section should also not apply to services rendered before that date. It therefore concludes that even if its lien is deemed ineffectual as to SNTs created under said amendment, that unenforceability should apply only to services rendered after the October 1, 1993 date. Again, this argument has superficial plausibility, but again it is contrary to the intent and purpose of the SNT amendment.
A starting place for an analysis of this argument is the amending section itself. First and foremost, it does much more than merely establish the exception for SNTs. The section (Pub L 103-66, §13611, 107 US Stat 622-627) is entitled "Transfers of Assets; Treatment of Certain Trusts” and subdivision (a) thereof (entitled "Periods of Ineligibility for Transfers of Assets”) first extends the "look-back” period for less than value asset transfers which render a would-be Medicaid recipient ineligible. It then generally lengthens the period of such ineligibility. This subdivision adds as an exception to these provisions the SNT exemption spelled out in the ensuing subdivision (i.e., subdivision [b], see, infra) and clarifies and apparently expands when a jointly held asset will be considered transferred. It also includes several other, minor amendments. Subdivision (b) (entitled "Treatment of Trust Amounts”) adds a new subdivision (d) to the preceding transfer provisions which clarifies and apparently expands what will be considered available resources and income of and transfers by a trust beneficiary/Medicaid recipient (said subdivision [d] essentially replaces the prior "medicaid qualifying trust” provision, 42 USC § 1396a [k]; see, Matter of Gibson, supra, at 532, n 5). The exceptions to these provisions in subdivision (b) include the subject SNT exemption. (See, Pub L 103-66, §13611 [b], 107 US Stat 625, amending 42 USC § 1396p [d] [4] [A].) Subdivision (c) of the amending section adds definitions (in a new subdivision [e] to 42 USC § 1396p) and subdivision (d) makes conforming amendments to 42 USC *593 § 1396a (18), (51) and § 1396r-5, and deletes § 1396a (k) (see, Pub L 103-66, § 13611, 107 US Stat 626-627).
It can thus be seen that this amending section, which deals solely with eligibility, is concerned chiefly with (a) look-backs and periods of ineligibility therefrom, and (b) transfers, both in general and with respect to trusts in particular. The changes effected by the section are generally restrictive as far as recipients are concerned and, by being made prospective through the effective date provisions, they do not unfairly limit benefits to recipients for conduct under and in reliance on prior law. The effective date for transfers and trusts (i.e., Aug. 10, 1993; see, Pub L 103-66, § 13611 [e] [2] [B], [C], discussed supra, at 590-592) would seem to so protect recipients as to prior conduct relative thereto vis-á-vis future eligibility. However, there is a gap between this August 10, 1993 date and the October 1, 1993 effective date for payments (see, Pub L 103-66, § 13611 [e] [1], discussed supra, at 591-592). Under the look-back provisions, there could be inconsistency between the two dates as to the application of the amendments to services furnished within that gap period, particularly since payments typically follow the rendering of services. Other than this limited application, however, the effective date relating to services appears little more than just extra protection to that afforded by the other effective dates. This is supported by the State Legislature’s omission of any medical services effective date (see, infra, at 594-595).
More importantly, the subject section does not deal with liens or personal injury actions and thus should not be considered a limit thereon. A subsequent amending section (i.e., Pub L 103-66, § 13622, 107 US Stat 632) generally refers to recovery of past medical assistance from third parties (see, Pub L 103- 66, § 13622 [c], 107 US Stat 632), but, as indicated in our prior decision, such seemingly only made mandatory formerly optional provisions which the State of New York apparently already had in effect under Social Services Law §§ 104 and 104- b (see, Matter of Gibson, supra, at 535, n 22). Consequently, considering the subject matter of the various provisions of the amending section, we do not believe the effective date for the furnishing of medical services was intended as a limitation on the SNT exemption. Concomitantly, we find the would-be construction argued for by DSS not required by the terms of the relevant Federal provisions.
This finding also answers DSS’ argument that unléss its lien for services up to October 1, 1993 is satisfied prior to the *594 creation of the SNT, it will not be able to recover for those services upon termination of the trust. It bases this ancillary argument on said services’ effective date, but, as found, such does not apply to SNTs, personal injury actions or liens relating thereto. DSS’ proposed construction is also contrary to the statutory use of the word "total” in describing the medical assistance payments recoverable upon the termination of the SNT (see, 42 USC § 1396p [d] [4] [A]; Social Services Law § 366 [2] [b] [iii]). In any event, DSS’ recovery at that time will be on the basis of the agreement and de facto conditional assignment by the beneficiary/recipient embodied in the SNT (cf., Social Services Law § 104-b [11]), not on any statutory right of recovery or statutory lien.
The court’s above interpretation is also supported by the State implementing legislation. The applicable effective date provisions therein read as follows:
"The provisions of sections [447] through [472] of this act shall be deemed to have been in full force and effect on and after April 1, 1994, provided that:
"(a) section [449][4] of this act shall apply only with respect to trusts created on or after August 10, 1993;
"(b) sections [449] and [450][5] of this act shall be effective only with respect to applications for and recertifications of eligibility for medical assistance submitted on or after September 1, 1994 and sections [451] and [452][6] of this act shall be effective only with respect to payments made on or after October 1, 1993 and with respect to persons who die on or after October 31,1993.” (L 1994, ch 170, § 564 [57].)
Nowhere in said provisions is there any references to the amendments not applying to prior medical services and the only mention of October 1, 1993 concerns a recipient’s real property and estate (see, n 6, supra). As with the interpreta *595 tian to be given SNT provisions generally, we believe the State statute is entitled to significant and persuasive weight with respect to the subject medical services effective date. (See, Matter of Gibson, supra, at 536-537.) Apparently the State Legislature did not consider the extra protection of such a date necessary, at least in light of the August 10, 1993 effective date for trusts and the September 1, 1994 such date for eligibility. By the time this legislation was being considered, the possibility of inconsistency during the noted gap period (see, supra, at 593) was moot. The State Legislature was where provisions concerning liens and personal injury proceeds were specifically considered (and rejected) relative to SNTs, and there is no indication time limits beyond those noted above were also considered necessary with respect thereto. In other words, the deliberative body responsible for developing the legislation implementing OBRA '93 and SNTs apparently did not find the claimed time limitation applicable to said liens and proceeds. Accordingly, based on all of the foregoing, we find the proffered OBRA '93 effective date not to be a limitation on the applicability of the relevant SNT legislation to liens on personal injury proceeds.
The last issue concerns DSS’ request for resettlement. The County argues that by not satisfying its lien prior to the transfer of the personal injury proceeds to the SNT, the court is effectively vacating the lien. It contends this is so because the lien attaches to only one form of property (i.e., said proceeds) and not any other form, such as trust assets. Whether the court’s finding that the lien need not be satisfied technically constitutes vacatur thereof may be a question of semantics. However, DSS’ point that its lien may not attach to trust assets is well taken. We are not aware of any authority for the transference of this type of lien to another form of property. Of course, by the terms of the trust (see, supra, at 594), DSS will be entitled to recover from the remaining trust assets for the medical assistance covered by the lien, together with all other medical assistance provided. Nonetheless, we deem it appropriate to amend the subject order to more accurately reflect the technical legal consequences of the court’s ultimate determination.
Accordingly, it is
Ordered, that the first decretal paragraph of the court’s order of August 15, 1994 is amended to read as follows:
"Ordered, that the lien of the Department of Social Services *596 of the County of Suffolk for past medical assistance rendered to the above-named Conservatee shall not be required to be paid before the establishment of the Supplemental Needs Trust to be created herein, but the medical assistance covered by said lien shall be subject to payment, together with any other medical assistance so rendered, upon the termination of said Trust in accordance with the terms thereof.”

. Social Services Law § 104 speaks in terms of recovery against a person who is or was liable for the "support” of a recipient, but such has been interpreted to include third-party tortfeasors who are liable for injuries which result in the rendering of medical assistance (see, e.g., Sterling v Baker, supra, at 404-405).

. Admittedly, in this case the settlement is large enough to satisfy DSS’ lien and still have enough left to fund a SNT. In more modest settlements, however, the DSS lien may exhaust the proceeds and then nothing will be available for a SNT. DSS’ interpretation in those situations would thus effectively defeat the very purpose of the Federal and State laws authorizing SNTs.

. The subject law (i.e., OBRA '93) was enacted August 10,1993.

. This amending section adds a new subparagraph (2) to Social Services Law § 366 (2) (b) and corresponds to the OBRA '93 trust provisions, including the SNT exemption (see, Pub L103-66, § 13611 [b], discussed supra, at 592-593).

. This amending section amends Social Services Law § 366 (5) (a) and adds a new paragraph (d) to § 366 (5). It corresponds to the OBRA '93 transfer of assets provisions, including the SNT exception thereto (see, Pub L 103-66, § 13611 [a], [c], discussed supra, at 592-593).

. These amending sections amend Social Services Law § 369 relative to recoveries from a recipient’s real property and estate for medical assistance "correctly paid” (see, OBRA '93, Pub L 103-66, § 13612, 107 US Stat 627-629). They do not mention SNTs and are not specifically referable thereto.