[640 NYS2d 573]

PATRICIA CRICCHIO, Individually and as Guardian ad Litem of CHRISTOPHER CRICCHIO, Respondent, v JOSEPH A. PENNISI et al., Defendants, and MICHAEL DOWLING, as Social Services Commissioner of the State of New York, et al., Appellants.

Second Department, April 1, 1996

## APPEARANCES OF COUNSEL

*Paul A. Crotty, Corporation Counsel* of New York City *(Larry A. Sonnenshein* and *Mordecai Newman* of counsel), for Commissioner of the New York City Department of Social Services, appellant.

*Dennis C. Vacco, Attorney-General,* New York City *(Richard T. Mathieu* and *Judy E. Nathan* of counsel), for Commissioner of the New York State Department of Social Services, appellant.

*Robert, Lerner & Robert,* Rockville Centre *(Charles Robert* and *Joan Lensky Robert* of counsel), for respondent.

## OPINION OF THE COURT

BRACKEN, J. P.

The appellants paid, or caused to be paid, $27,970.60 in medical benefits to, or on behalf of, the plaintiff Christopher Cricchio. This sum was paid prior to the formation of any "supple-

mental needs trust" of which this plaintiff is, or is to become, the beneficiary. The question is whether the appellants are or were entitled to the satisfaction of what they characterize as an outstanding lien for the sum of $27,970.60. We conclude that they are not and affirm the compromise order of the Supreme Court.

Patricia Cricchio, a coplaintiff and also the guardian ad litem of the plaintiff Christopher Cricchio, made an application for an order approving the proposed settlement of the present medical malpractice action. The proposed settlement, to which various defendants would contribute, was for the sum total of $410,000. The plaintiffs' attorney requested that the order approving the settlement be tailored so that Christopher Cricchio would "not be forced to spend this tort award on items of need that government entitlements would otherwise provide him". The attorney requested, among other things, that all of the settlement amount be "allocated for pain and suffering", and that none of it be allocated for "past medical benefits provided by a third party".

In opposition to this application, an Assistant Attorney-General stated that "the plaintiff has received [medical assistance] for the cost of his care arising out of his personal injuries, for which the City has an enforceable lien against the proceeds of this action in the amount * * * of $27,970.60". The Assistant Attorney-General argued that "[t]his lien must be completely satisfied before the funds may be placed in [a 'supplemental needs trust']."

The Supreme Court ultimately signed an order that, after approving the $410,000 settlement, and after the deduction therefrom of certain expenses, provided for the placement of $264,557 in a "supplemental needs trust" for the benefit of Christopher Cricchio.

The appellants argue that the Supreme Court erred in failing to direct satisfaction of the City's lien for the sum of $27,970.60. They contend that a "supplemental needs trust" may not be formed from the proceeds of a tort settlement until there is satisfaction of an outstanding lien that reflects medical benefits paid prior to the formation of the trust. We disagree with the appellants' argument.

The general principle that "[a] public welfare official", under whose authority public assistance has been provided to an individual who is later discovered to have property, becomes a "creditor" of such individual, is set forth in Social Services Law § 104 (1). Pursuant to this section, the public welfare of-

ficial in question is "deemed a preferred creditor" of the individual to whom such assistance has been provided, and may "bring [an] action or proceeding" (Social Services Law § 104 [1]) against such an individual on the theory that the assistance was furnished under "an implied contract" *(Hoke v Ortiz,* 83 NY2d 323, 328, 332, *cert denied* — US —, 115 S Ct 182; *see generally, Mendelson v Transport of N. J.,* 113 AD2d 202).

Social Services Law § 104-b, like section 104, is concerned with the mechanisms by which State-sponsored medical assistance may be recouped. Section 104 deals primarily with recipients of public assistance later discovered to have property; section 104-b deals with recipients of public assistance who "have a right of action * * * on account of * * * personal injuries". This statute decrees that a public welfare official shall have a lien for the amount of public assistance furnished, and that such lien shall, subject to certain conditions *(see,* Social Services Law § 104-b [2]) attach "to any verdict, decision, decree, judgment, award or final order in any suit, action or proceeding * * * respecting such [personal] injuries" (Social Services Law § 104-b [3]). Such liens, assuming compliance with the conditions specified, "shall continue until * * * discharged by the local public welfare official by an instrument in writing * * * and no release, payment, discharge or satisfaction of [the public assistance recipient's] right of action * * * shall be valid or effective against such lien" (Social Services Law § 104-b [7]). The purpose of this statute is to facilitate recoupment of public funds by social services agencies *(Kidney v Kolmar Labs.,* 68 NY2d 343).

In 1993, the Legislature altered the scope of Social Services Law § 104 by, in essence, decreeing that assets held in a "supplemental needs trust", as defined in EPTL 7-1.12, may not serve as the basis for the public welfare official bringing an action, as a creditor, against a recipient of public assistance later discovered to have property, on a theory of implied contract. The 1993 legislation added subdivision (3) to Social Services Law § 104, which subdivision provides: "To the extent described in section 7-1.12 of the estates, powers and trusts law, the trustee of a supplemental needs trust which conforms to the provisions of such section 7-1.12 shall not be deemed to be holding assets for the benefit of a beneficiary who may otherwise be the subject of a claim under this section and no action may be brought against either the trust or the trustee to recover the cost of assistance or care provided to such person, or anyone for whose support such person is or was liable" (L 1993, ch 433, § 3, as amended).

The Legislature did *not* similarly amend Social Services Law § 104-b so as to expressly exempt from the scope of a public welfare official's lien the proceeds of a personal injury action brought by the recipient of public assistance, or so much of those proceeds as the parties propose to place into a "supplemental needs trust". It is this lien which the appellants herein now seek to enforce, and which the respondents now seek, in effect, to have discharged. The respondents argue that the proceeds of the personal injury action are immune from the lien authorized pursuant to Social Services Law § 104-b to the extent that those proceeds are destined to become the corpus of a "supplemental needs trust", as this term is defined in EPTL 7-1.12 (L 1993, ch 433, § 5).

One of the linchpins in EPTL 7-1.12 is found in EPTL 7-1.12 (b) (3), which states, "[n]either principal nor income held in [supplemental needs] trust[s] shall be deemed an available resource to the beneficiary under any program of government benefits or assistance". The term " '[g]overnment benefits or assistance' " is defined so as to include "any program of benefits or assistance which is intended to provide or pay for support, maintenance or health care" (EPTL 7-1.12 [a] [2]).

For the purposes of the present dispute, the terms of EPTL 7-1.12 essentially recognize the validity, under defined circumstances, of trusts designed to generate income that will benefit a chronically disabled person without destroying that person's eligibility for various kinds of government benefits. When the specific benefit at issue is Medicaid *(see,* 42 USC § 1396 *et seq.),* then the effect which the establishment of a supplemental needs trust may have on the disabled person's eligibility becomes a question primarily of Federal law.

In general, 42 USC § 1396p (d) governs the effect that a disabled person's status as the beneficiary of a trust may have on his or her eligibility for Medicaid. Subject to certain provisos, this law establishes, in the case of revocable trusts, that the trust corpus will be considered to be a "resource[ ] available to the individual" for Medicaid eligibility purposes (42 USC § 1396p [d] [3] [A] [i]) and, in the case of irrevocable trusts, that the portion of the trust corpus from which payments could be made (if such payments can in fact be made under any circumstances) will be considered "resources available to the individual" for these purposes (42 USC § 1396p [d] [3] [B] [i]). If an irrevocable trust has been created by the applicant for medical benefits, and no payments can in fact be made to him from the corpus of the trust, then the trust is considered to be an asset

"disposed by the individual" to be treated as provided elsewhere in the statute (42 USC § 1396p [d] [3] [B] [ii]).

These general rules are, as noted, subject to various provisos. For the purposes of the present case, the proviso most immediately apparent is that set forth in paragraph (4) (A) of 42 USC § 1396p (d). This paragraph and subparagraph state as follows:

"This subsection shall not apply to any of the following trusts:

"(A) A trust containing the assets of an individual under age 65 who is disabled (as defined in section 1382c [a] [3] of this title) and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter [42 USC §§ 1396 et seq.]."

The trust envisioned in the present case falls within the scope of 42 USC § 1396p (d) (4) (A). This circumstance, according to the terms of 42 USC § 1396p (d) (1), means that the general rules specified in paragraph (3) of section 1396p (d) do not apply.

In New York law, a disabled individual's eligibility for medical assistance is governed by Social Services Law § 366. Subdivision (2) (b) (2) of this statute defines the circumstances under which the corpus of a trust will be deemed an available resource, or where the income from a trust will be considered income, for the purposes of medical eligibility. Shadowing the terms of 42 USC § 1396p (d) (3) (A), the State statute provides that revocable trusts are to be regarded as available resources (Social Services Law § 366 [2] [b] [2] [i]), and, shadowing the terms of 42 USC § 1396p (d) (3) (B), the State statute provides, in general, that irrevocable trusts will be regarded as available resources to the extent that the corpus may be invaded (see, Social Services Law § 366 [2] [b] [2] [ii]).

New York's statutory scheme also has a provision which corresponds to the special exception to these general rules which, in Federal law, is set forth in 42 USC § 1396p (d) (4) (A). Specifically, Social Services Law § 366 (2) (b) (2) (iii) (A) states the following: "(iii) Notwithstanding the provisions of clauses (i) and (ii) of this subparagraph, in the case of an applicant or recipient who is disabled, as such term is defined in section 1614 (a)

(3) of the federal social security act, the department must not consider as available income or resources the corpus or income of the following trusts which comply with the provisions of the regulations authorized by clause (iv) of this subparagraph: (A) a trust containing the assets of such a disabled individual which was established for the benefit of the disabled individual while such individual was under sixty-five years of age by a parent, grandparent, legal guardian, or court of competent jurisdiction, if upon the death of such individual the state will receive all amounts remaining in the trust up to the total value of all medical assistance paid on behalf of such individual".

As can be seen from the foregoing, the conditions under which a special needs trust can be created under New York law, without triggering the beneficiary's disqualification for Medicaid benefits, are ultimately defined in Social Services Law § 366 (2) (b) (2) (iii) and (iv). The legislative history of clause (iv) is of particular significance and assistance in resolving this dispute.

As originally proposed in January of 1994, section 20 of the Governor's Budget Bill suggested amending Social Services Law § 366 (2) (b) (2) by adding clause (iv) to read as follows: "The provisions of clause (iii) of this subparagraph shall apply to a trust *only if: at the time the trust is established there exists no claim* against the applicant or recipient *pursuant to section* one hundred four, *one hundred four-b,* or three hundred sixty-nine of this chapter, or subdivision three of this section, *to recover the cost of medical assistance provided* to the applicant or recipient *prior to the creation of the trust;* and all expenditures from the corpus and income of the trust, other than administrative expenses, are made to, or for the direct benefit of, the applicant or recipient". (Governor's Budget Bill, § 20 [emphasis supplied]; 1994 NY Senate-Assembly Bill S 6458, A 9158.) This legislation was not enacted.

In March of 1994, a second version of clause (iv) was drafted. This suggested legislation provided that no trust fund for a disabled individual under the age of 65 be created as long as there existed a claim or lien against the applicant or recipient pursuant to Social Services Law §§ 104, 104-b and 369 to recover the cost of public assistance provided prior to the creation of the trust. However, a court could reduce the amount to be paid if repayment would cause an undue hardship upon the disabled individual (Governor's Budget Bill § 20, proposing addition of Social Services Law § 366 [2] [b] [2] [iv] [B]). Nonetheless, the Legislature did not enact the suggested bill.

The version of Social Services Law § 366 (2) (b) (2) (iv) which was ultimately signed into law is devoid of any provisions substantively comparable to those above highlighted. The most plausible inference to be drawn from this is that the Legislature did not intend the existence of a claim pursuant to Social Services Law §§ 104,104-b or 369 to stand as an impediment to the funding of the special needs trust in conformity with the provisions of Social Services Law § 366 (2) (b) (2). The Supreme Court has addressed this question on several occasions, in addition to the occasion which gives rise to this appeal, and has held that liens imposed pursuant to Social Services Law § 104-b need not be satisfied prior to the funding of a "supplemental needs trust" in accordance with Social Services Law § 366 (2) (b) (2) *(see, Samerson v Mather Mem. Hosp.,* 166 Misc 2d 228; *Link v Town of Smithtown,* 162 Misc 2d 530, *on rearg* 162 Misc 2d 587; *Rosado v Perez,* NYLJ, Nov. 3, 1995, at 39, col 6).

The State Department of Social Services filed emergency regulations implementing chapter 170 of the Laws of 1994. One condition imposed by the regulations is that any lien obtained pursuant to Social Services Law §§ 104-b or 369 on the funds used to establish the trust on account of Medicaid provided prior to the trust establishment must be satisfied or otherwise resolved in order for those funds to be disregarded. Specifically, 18 NYCRR 360-4.5 (b) (5) (ii) provides, in pertinent part, that "[i]n the event that a lien has been imposed pursuant to the provisions of section 104-b or 369 of the Social Services Law upon the funds which are to be used to establish a [supplemental needs trust] on account of MA [medical assistance] provided prior to the date the trust is to be established, such lien must be satisfied or otherwise resolved in order for the assets subject to such lien to be disregarded in determining MA [medical assistance] eligibility".

This rule was filed after the first decision issued by the Supreme Court in *Link v Town of Smithtown (supra),* and before the decision issued by the Supreme Court in *Samerson v Mather Mem. Hosp. (supra)* and *Rosado v Perez (supra; see also,* Goldfarb and Stone, *Supplemental Needs Trusts for Disabled Persons,* 67 NY St BJ [No. 5] 32 [July/Aug. 1995]). The Supreme Court decisions which have addressed the significance of this rule have concluded that the rule is unenforceable because the legislative history noted above evinces a clear legislative intent to permit funding of supplemental needs trusts prior to the satisfaction of a public welfare official's lien for medical assistance furnished prior to the formation of the trust. We agree with this conclusion.

The legislative history of chapter 170 of the Laws of 1994 establishes without doubt that the Legislature considered various provisions requiring satisfaction of a Medicaid lien prior to the funding of a "supplemental needs trust". The failure of the Legislature to include any such provision in the final version of the law indicates an intent to allow the funding of such trusts even prior to the satisfaction of existing Medicaid liens *(Link v Town of Smithtown,* 162 Misc 2d 587, *supra; Samerson v Mather Mem. Hosp., supra).* The failure of the Legislature to include, in the final version of a statute, a provision present in one or more of the proposals considered prior to the statute's final enactment is evidence that such provision was deliberately excluded *(see, e.g., Pajak v Pajak,* 56 NY2d 394).

We are also of the opinion that, as between the interpretation of chapter 170 proposed by the appellants, and that advocated by the respondents, it is the interpretation of the respondents which more closely conforms to the ideal of treating similarly positioned litigants in the same way. According to the appellants' interpretation, two identical personal injury plaintiffs, each the recipient of comparable medical assistance, and each offered a settlement of the same amount, would face the prospect of actually receiving different amounts depending on the speed with which the settlement is actually offered. The size of the Medicaid lien would correspond to the length of time needed to achieve a settlement, and the amount ultimately realized by the individual plaintiff would be an inverse relationship to the size of the lien. In complex cases, which typically take years to settle, the size of the lien might be such as to render any possible settlement futile from the perspective of the injured plaintiff. The legislature may well have wished to avoid this discrepancy in not adapting the proposals above noted *(see, Link v Town of Smithtown, supra).*

In sum, we hold that the satisfaction of a preexisting Medicaid lien is not a precondition to the funding of a supplemental needs trust. Therefore, the compromise order of the Supreme Court is affirmed.

ROSENBLATT, SULLIVAN and HART, JJ., concur.

Ordered that the compromise order is affirmed, with one bill of costs payable by the appellants appearing separately and filing separate briefs.