*910 OPINION OF THE COURT
Yvonne Lewis, J.
On March 14, 1997, the Department of Social Services recorded a lien against 5707 12th Avenue, Brooklyn, New York, block 697, lot 7, for Medicaid nursing home coverage that had been furnished to the plaintiffs mother, the late Josephine Roccanova, from August 12, 1996 and accruing eventually to October 1, 2001 (the date of her demise). The plaintiff, noting that “more than six years have passed since defendant filed its lien against the subject property, and defendant has failed to take any action to enforce the lien,” has now petitioned this court for an order declaring that the notice of lien filed by the defendant is barred by the statute of limitations, and that he is the lawful and unencumbered owner of the mentioned property. The plaintiff rests his argument on the fact that CPLR 213 (2) provides for a six-year period to institute suit on a “contractual obligation or liability, express or implied.”
It is also noted that by deed, dated February 11, 1998, the subject property, jointly held by Josephine and Leo Roccanova, with rights of survivorship, was transferred to the latter, subject to the life estates of the grantors.
The Department of Social Services seeks a dismissal of the plaintiffs order to show cause on the ground of improper service in the underlying action because the summons was not served upon “the corporation counsel or to any person designated to receive process in a writing filed in the office of the clerk of New York county,” pursuant to CPLR 311. In addition, counsel for the Department of Social Services asserts that:
“[CJontrary to plaintiffs contention, the Department of Social Services recorded a lien upon the real property in question pursuant to Social Services Law § 369(2)(b) (i)(A) and (B), not Social Services Law § 104-b(2). Social Services Law § 104-b(2) gives the Department of Social Services the authority to assert a Medicaid lien against a personal injury settlement that a Medicaid recipient receives. Social Services Law § 369(2)(b)(i)(A) and (B) give the Department of Social Services the right to impose a lien against the real property owned by a recipient of Medicaid assistance and states, in relevant part: ‘no adjustment or recovery may be made against the property of any individual on account of any medical assistance correctly paid to or on behalf *911 of an individual under this title, except recoveries must be pursued: (A) upon the sale of the property subject to a lien imposed on account of medical assistance paid to an individual. . . and (B) from the estate of an individual who was fifty-five years of age or older when he or she received such assistance.’ ”
In short, the Department of Social Services makes a twofold argument:
1. “As the [subject] property hasn’t been sold and hasn’t yet become part of the decedent’s estate, the Department of Social Services’ lien should remain in place and enforceable . . . [A]ny statute of limitations would begin to run co-incident with the Department of Social Services’ rights on the hen accruing, not its date of recording”; and
2. The Department of Social Services asserts no express or implied contractual lien, but a statutory right under Social Services Law § 369 (2) (b) (i) (A) and (B) as above explained. “CPLR § 213 (1) prescribes a six-year statute of limitations for those actions for which no express time limit is specifically prescribed by law . . . Therefore, the statute of limitations on the Department of Social Services’ lien would begin to accrue October 1, 2001, the date of the Medicaid recipient’s death. The Department of Social Services would then have six years from October 1, 2001, or October 1, 2007 ... to commence an action for payment of its Medicaid lien.”
The Department of Social Services also
“reserves the right to bring an- action against the decedent Medicaid recipient’s estate under the Debtor and Creditor Law § 273 . . . [since] . . . decedent’s uncompensated transfer of the property into a revocable trust [constituted] a fraudulent conveyance, as the decedent’s interest in the property was transferred without fair consideration and rendered her estate insolvent.”
Plaintiffs counsel, in his reply brief, notes that, on February 11, 1998, the plaintiff had created a revocable trust, entitled “Roceanova Family Trust, Revocable Inter Vivos Trust,” where-under the subject property became the trust corpus, with life estates to Josephine and Leo Roceanova retained in the real property. Plaintiff contends that “[i]t logically follows that cred *912 itors of the settlor of a self-settled trust can prosecute and enforce a judgment against her interests [his mother’s] in the trust.” (Citing Vanderbilt Credit Corp. v Chase Manhattan Bank, 100 AD2d 544 [1984]; CPLR 5205 [c] [2].) In addition, plaintiff asserts that a claim of laches would apply to any lawsuit against his mother’s estate inasmuch as the Department of Social Services’ failure to have given notice of the lien when filed to both owners — his mother and him — as statutorily required precluded an outright transfer of the property to the plaintiff at an earlier time which would have triggered a statutory penalty at a prior value far less onerous than the present value of half of his property. It was not until 2003 that the plaintiff became aware of the lien when the property was marketed for sale. Furthermore, the plaintiff points out that “[i]t has been repeatedly held that the six (6) year statute of limitations to void an alleged fraudulent transfer runs from the date of the alleged fraud, in this case, the February 11, 1998 conveyance to the trust.” (Citing Bloomfield v Bloomfield, 280 AD2d 320 [2001].) The plaintiff, however, fails to take into account that CPLR 213 (8) specifically provides that “the time within which the action [based upon fraud] must be commenced shall be computed from the time the plaintiff or the person acting under whom he claims discovered the fraud, or could with reasonable diligence have discovered it” (amended L 2004, ch 403, § 1, eff Aug. 17, 2004), and that CPLR 203 (g) conjunctively adds that:
“[W]here the time within which an action must be commenced is computed from the time when facts were discovered or from when the time when facts could with reasonable diligence have been discovered, or from either of such times, the action must be commenced within two years after such actual or imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer.”
Finally, the plaintiff states that “[w]hen a sole trustee (in this case the plaintiff) becomes the sole beneficiary of property placed in trust, a merger of beneficial and equitable interests occurs, terminating the trust by operation of law” (citing 106 NY Jur 2d, Trusts § 560; In re Heilbronner’s Trust, 196 NYS2d 284 [1959]). From this, the plaintiff concludes that his mother, Mrs. Roccanova, had no estate at the time of her death against which recovery can be enforced by the Department of Social Services since the subject property became his (the plaintiffs) immediately upon her death.
*913 Social Services Law § 104 (1) reads that:
“A public welfare official may bring action or proceeding against a person discovered to have real or personal property, or against the estate or the executors, administrators and successors in interest of a person who dies leaving real or personal property, if such person, or any one for whose support he is or was liable, received assistance and care during the preceding ten years, and shall be entitled to recover up to the value of such property the cost of such assistance or care . . . [T]he public welfare official shall be deemed a preferred creditor.”
Under Social Services Law § 104-b (1),
“[i]f a recipient of public assistance and care shall have a right of action, suit, claim, counterclaim or demand against another on account of any personal injuries suffered by such recipient, then the public welfare official . . . providing such assistance and care shall have a lien for such amount . . . not exceeding, however, the total amount of such assistance and care furnished ... on and after the date when such injuries were incurred.”
Subdivision (7) adds that the lien “shall be valid and effective, when the notice thereof and the statement are served and filed [as indicated in the statute] and shall continue until released and discharged.”
Social Services Law § 369 (2) (a) (ii) provides that a hen may be imposed on account of medical assistance paid or to be paid “with respect to the real property of an individual who is an inpatient in a nursing facility.” Subdivision (2) (b) (i) (A) and (B) qualify, in pertinent parts, that recoveries must be pursued either “upon the sale of the property subject to a lien imposed on account of medical assistance ... or from the estate of such individual; and . . . from the estate of an individual who was fifty-five years of age or older when he or she received such assistance.”
The Court of Appeals, in Cricchio v Pennisi (90 NY2d 296 [1997]), in reversing the Appellate Division, Second Department, held that the Department of Social Services is entitled to first satisfy a Medicaid lien on proceeds obtained from a personal injury settlement before those funds may be transferred to a supplemental needs trust that complies with EPTL 7-1.12. The rationale underlying this conclusion was that Social Services Law § 369 (2) (c) provides that the prohibition of impos *914 ing a lien against the property of any individual prior to his death is not intended to interfere with the right of the social services agency to recover from third parties under section 104-b’s lien provisions. In addition,
“[t]he trustee could easily deplete trust assets by spending them on worthwhile ‘quality of life’ expenditures such as vacations and entertainment for the disabled beneficiary . . . [and] thwart the twin goals of the Medicaid program — i.e., to obtain reimbursement from liable third parties and remain the payer of last resort.” (Cricchio at 309.)
The Court also aptly noted (at 304-305) that:
“Medicaid is a jointly funded Federal and State medical assistance program that is established by title XIX of the Social Security Act (42 USC § 1396 et seq.) and is implemented in this State by article 5, title 11 of the Social Services Law. The purpose of the program is to pay for necessary medical care for eligible individuals whose income and resources are insufficient to meet the costs of their medical care (42 USC § 1396; Social Services Law § 363; Matter of Costello [Stark] v Geiser; 85 NY2d 103). As a condition of the receipt of Federal program funding, State Medicaid plans must conform with the statutory standards established by Federal law and the regulations promulgated by the Secretary of Health and Human Services (42 USC § 1396a; Social Services Law § 363-a [1]).”
Though subsequently reversed by the Court of Appeals on the grounds just mentioned, the Appellate Division, Second Department, in Cricchio v Pennisi (220 AD2d 100, 104 [1996]), aptly noted that:
“In general, 42 USC § 1396p (d) governs the effect that a disabled person’s status as the beneficiary of a trust may have on his or her eligibility for Medicaid. Subject to certain provisos, this law establishes, in the case of revocable trusts, that the trust corpus will be considered a ‘resource [ ] available to the individual’ for Medicaid eligibility purposes (42 USC § 1396p [d] [3] [A] [i]) and, in the case of irrevocable trusts, that the portion of the trust corpus from which payments could be made (if such payments can in fact be made under any circumstances) will be considered ‘resources available to the individual’ for these purposes (42 USC *915 § 1396p [d] [3] [B] [i]). If an irrevocable trust has been created by the applicant for medical benefits, and no payments can in fact be made to him from the corpus of the trust, then the trust is considered to be an asset ‘disposed by the individual’ to be treated as provided elsewhere in the statute (42 USC § 1396p [d] [3] [B] [ii]).”
One of the exceptions noted is a supplementary trust. The court went on to note (at 105-106) that:
“In New York law, a disabled individual’s eligibility for medical assistance is governed by Social Services Law § 366. Subdivision (2) (b) (2) of this statute defines the circumstances under which the corpus of a trust will he deemed an available resource, or where the income from a trust will be considered income, for the purposes of medical eligibility. Shadowing the terms of 42 USC § 1396p (d) (3) (A), the State statute provides that revocable trusts are to be regarded as available resources (Social Services Law § 366 [2] [b] [2] [i]), and, shadowing the terms of 42 USC § 1396p (d) (3) (B), the State statute provides, in general, that irrevocable trusts will be regarded as available resources to the extent that the corpus may be invaded (see, Social Services Law § 366 [2] [b] [2] [ii]).
“New York’s statutory scheme also has a provision which corresponds to the special exception to these general rules which, in federal law, is set forth in 42 USC § 1396p (d) (4) (A). Specifically, Social Services Law § 366 (2) (b) (2) (iii) (A) states the following: ‘(iii) Notwithstanding the provisions of clauses (i) and (ii) of this subparagraph, in the case of an applicant or recipient who is disabled, as such term is defined in section 1614 (a) (3) of the federal social security act, the department must not consider as available income or resources the corpus or income of the following trusts which comply with the provisions of the regulations authorized by clause (iv) of this subparagraph: (A) a trust containing the assets of such a disabled individual which was established for the benefit of the disabled individual while such individual was under sixty-five years of age by a parent, grandparent, legal guardian, or court of competent jurisdiction, if upon the death of such individual the state will receive all amounts remain *916 ing in the trust up to the total value of all medical assistance paid on behalf of such individual’.”
In the matter sub judice, the plaintiff, in 1998, transferred a home jointly owned with his mother, first to himself, then to a revocable trust while his mother was receiving Medicaid benefits (from 1996 to 2001). The plaintiff argues that the Medicaid lien asserted against the subject house, in 1997, should be disregarded inasmuch as the Department of Social Services never gave notice of the same, as statutorily required.
It is evident from the preceding discussion that two avenues existed whereby the plaintiffs mother could have legitimately transferred her interest in the subject real estate so as to put it, at least partially and for a time, beyond the reach of Medicaid; to wit, one, the creation of an irrevocable trust with no part of the corpus available to her; and, two, the formation of a supplemental needs trust. In both instances, a period of Medicaid ineligibility would have arisen during which she would have been responsible for her own nursing home costs, and any existing Medicaid liens would have had to have been satisfied (see 42 USC §§ 1396, 1382). In the second instance, any remaining value could have been placed in trust, with the entire corpus rendered payable to the State upon her death (see 42 USC § 1396; Social Services Law § 366).
This court cannot be complicit in any attempt to evade legal obligations. Hence, to the extent that the subject property’s transfer into a revocable trust was designed to evade nursing home payments that had been incurred and were accruing to a Medicaid recipient, it cannot be sanctioned by this court. The plaintiffs argument that the revocable trust’s corpus was available to the Department of Social Services to recoup its Medicaid nursing home payments serves the twofold purpose of establishing that the plaintiff was aware that the transfer did not constitute a legally permissible measure to avoid nonpayment of nursing home care and/or Medicaid reimbursement, and, a fortiori, that the plaintiff possessed an implicit knowledge of its ineligibility for benefits at the time of transfer. By the same token, the Department of Social Services’ lack of notice would undeniably have negatively impacted on the efficacy of a section 104 lien since such a lien is valid and effective (and continues until released and discharged) only when the notice thereof and the required statement are served and filed (see Social Services Law § 104 [1] [7]). In this instance, the Department of Social Services needs to comply with its statutory requirements in order *917 to be in a position to enforce its rights against the real property of its former recipient, now deceased, pursuant to Social Services Law § 369 (2) (b) (i) (A). In that regard, this court sees no statute of limitations barrier to such a course of action since the Medicaid recipient died in 2001.
On the basis of the foregoing, the plaintiffs motion to dismiss the defendant’s Medicaid lien as time-barred is denied in its entirety. The defendant’s request for a dismissal of the instant order to show cause due to improper service in the underlying action is likewise denied.