OPINION OF THE COURT
 

 Per Curiam.
 

 Where an insurer, on behalf of its insured, prior to a judgment or settlement in a tort action, makes voluntary advances for medical treatment to an injured party receiving public assistance, those advances do not constitute "the payment of any moneys” within Social Services Law § 104-b, so as to defeat the lien of the social services agency for its payments for medical treatment.
 

 On June 7, 1981, plaintiff William Kidney, Jr., an infant, suffered serious injuries when he climbed on a transformer located on the property of defendant Kolmar Laboratories, Inc. On July 13, 1981 and again on July 1, 1982, Liberty Mutual Insurance Co., on behalf of Kolmar (its insured), voluntarily made advances of $30,000 for William Jr.’s medical treatment to the infant’s parents, intending that these advances be offset against any ultimate award. Respondent, the Orange County Department of Social Services (DSS), also made payments (totaling $27,503.33) to the boy’s father for William Jr.’s medical treatment. An action against Kolmar and Orange and Rockland Utilities, Inc., in the United States District Court for the Southern District of New York, resulted in a judgment in the amount of $637,500 for William Jr. and $37,500 for his father, plaintiff William Sr. Kolmar’s share of the judgment payable to William Sr. was $22,500.
 

 Two
 
 weeks after entry of judgment, DSS served and filed a notice of lien, pursuant to Social Services Law § 104-b, for the $27,503.33 previously paid to William Sr. Plaintiffs moved for
 
 *345
 
 an order vacating the lien, effectuating the satisfaction of the judgment, and approving the distribution of the proceeds received in satisfaction of the judgment; DSS cross-moved for an order directing plaintiffs to pay the full value of the lien and sought enforcement of the lien against the award.
 

 The District Court concluded that the award to William Sr. included payment for his son’s medical expenses, and therefore was subject to recoupment, and it upheld the DSS lien on that award.
 
 *
 
 Recognizing that the effectiveness of the DSS lien under Social Services Law § 104-b (2) turned on whether Kolmar had been notified of the existence of the lien "prior to the payment of any moneys to [the] injured party,” the District Court noted that the statutory phrase "the payment of any moneys” was susceptible of two interpretations, and that the choice presented a question of first impression. The phrase could be read broadly to include any delivery of money, or narrowly to include only required transfers. The court looked to the legislative intent embodied in the statute, and chose the more limited definition, confining the word "payment” to sums delivered only after judgment or settlement. The court observed that "[interpreting payment as occurring after the resolution of a dispute defends the public weal from plaintiffs who would seek to turn an accident into a windfall. By law, agencies like the Orange County Department of Social Services must pay the medical expenses of injured indigents. The people of the State of New York have chosen to confer this benefit upon the disadvantaged. However, the State’s citizens have not sought to give indigent plaintiffs both their medical expenses and other sums which they can obtain from insurers eager to settle a claim quickly and inexpensively. This sort of double recovery at public expense is exactly what the several parts of § 104 are designated to prevent.” (83 Civ 8578, US Dist Ct, SDNY, Nov. 4, 1985, Gagliardi, J.)
 

 On Kolmar’s appeal, the United States Court of Appeals certified to us the following question (which we accepted for review): "whether money advanced by an insurer on behalf of its insured to an injured party, prior to settlement or judgment of a tort action, is 'the payment of any moneys’ within
 
 *346
 
 the meaning of section 104-b (2) of the New York Social Services Law.” We conclude that it is not.
 

 Social Services Law § 104-b allows social service agencies, in certain instances, to recoup public assistance payments for "assistance and care” from recipients who subsequently obtain recoveries in personal injury actions. Section 104-b (1), in particular, authorizes these agencies to fix liens against the recoveries, thereby enabling the agencies to recover the payments directly from the tort-feasors or their insurers. Section 104-b (2), however, imposes a notice requirement: "No such lien shall be eifective * * * unless a written notice * * * is * * * served [upon the tort-feasor and its insurer] prior to the payment of any moneys to such injured party”. The validity of the DSS lien here depends on whether or not the voluntary advances by Kolmar’s insurer constitute "the payment of any moneys” within the meaning of section 104-b (2).
 

 We agree with the conclusion of the District Court that "the payment of any moneys” as used in Social Services Law § 104-b (2) means payments made as a matter of obligation, not voluntary advances. Reading the word "payment” to mean performance of a duty or obligation, or discharge of a debt
 
 (see,
 
 Black’s Law Dictionary, at 1016-1017 [5th ed]), in this case supports the legislative purpose in enacting Social Services Law § 104-b — to facilitate recoupment of public funds by social services agencies
 
 (see, Baker v Sterling,
 
 39 NY2d 397, 405-406). Conversely, the interpretation urged by appellant— that "the payment of any moneys” means
 
 any
 
 transfer of money — would enable a tort-feasor or its insurer, by even minimal voluntary advances to an injured indigent person, to defeat the agency’s lien and thereby render the statute meaningless. While defendant urges that public policy will be disserved by our reading of the statute, because tort-feasors and their insurers will be discouraged from making voluntary advances, it remains for the Legislature to amend the law if our construction does not conform to the legislative purpose.
 

 Accordingly, the certified question should be answered in the negative.
 

 Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander, Titone and Hancock, Jr., concur in Per Curiam opinion.
 

 On review of submissions, following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this court pursuant
 
 *347
 
 to section 500.17 of the Rules of Practice of the New York State Court of Appeals (22 NYCRR 500.17), certified question answered in the negative.
 

 *
 

 Although William Sr. is subject to suit for recoupment of the medical expenses paid to him by Kolmar, he is without assets. Thus, as a practical matter, the priority of the claims will determine whether Kolmar or DSS suffers a loss. The court concluded that amounts paid to the infant himself were not subject to recoupment, and this is not in issue before us.