■ JULIO NAJARRO, Respondent, v SUMMIT SECURITY SERVICES, INC., et al., Defendants. SUMMIT SECURITY SERVICES, INC., Third-Party Plaintiff, v GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., Third-Party Defendant-Appellant, et al., Third-Party Defendant. COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK et al., Nonparty Respondents. [671 NYS2d 452] —Order, Supreme Court, Bronx County (Bertram Katz,

J.), entered March 26, 1996, which directed (1) the workers' compensation administrator (Crawford & Co.) for third-party defendant Great Atlantic & Pacific Tea Company (A&P) to pay nonparty Beth Abraham Health Services $779,325 for past medical services rendered to plaintiff, (2) Beth Abraham in turn to reimburse nonparty New York City Department of Social Services (DSS)[1] $600,516.34 out of the money received from Crawford, (3) Crawford to pay DSS $223,563.27 for Medicaid disbursed to health care providers other than Beth Abraham, (4) DSS to waive all claims for interest or collection legal fees on sums paid to Beth Abraham, (5) Beth Abraham to forward all future monthly statements solely to Crawford, and (6) Crawford to pay Beth Abraham's monthly invoices in full within ten days, unanimously reversed, on the law, without costs, the order vacated, and the following order substituted in its stead: A&P is responsible for plaintiff's pre-settlement medical bills. The matter is remanded to Supreme Court for a hearing and determination of the amount of the DSS Medicaid lien against A&P and/or Crawford, as well as other medical care providers initially paid by DSS. Medical care providers are not to be involved in the reimbursement of DSS for Medicaid payments. Any claims by Beth Abraham (or other medical providers) against Crawford, either for moneys owed above and beyond the Medicaid payments it received or for unreimbursed care rendered since March 1, 1996, are remanded to the Workers' Compensation Board (WCB) for determination. Beth Abraham is directed to forward all future medical bills to Crawford, but these bills must be considered for payment in accordance with the Workers' Compensation Law, without an arbitrary time limit imposed by the court.

In 1985, while employed by A&P, plaintiff, then 18 years old, was critically injured when negligently shot by defendant Griffin, an employee of defendant Summit Security Services. He remains comatose and requires 24-hour institutional care, probably for the rest of his life. Since 1987, plaintiff has been receiving such care at Beth Abraham Hospital's residential care facility in the Bronx.

In 1989, the WCB ruled that A&P must continue to pay plaintiff's wages. Such an order gives the employer and/or its workers' compensation carrier a lien against future recoveries in satisfaction of claims for liability.

Plaintiff's medical bills should also have been paid, from the start, by workers' compensation. However, plaintiff errone-

---

1. Incorrectly designated the New York City Human Resources Administration.

ously applied for medical assistance to DSS, and, unwittingly, DSS paid for that medical care for the period October 1987 through February 1996. When DSS realized the error in 1994, it pursued A&P and Crawford for reimbursement. Meanwhile, Beth Abraham contended that the difference between the Medicaid rate it was receiving and the workers' compensation rate it should have been receiving, over the course of those 8½ years, was $180,000.

In October 1994, defendant Summit Security settled, agreeing to pay plaintiff $1 million, the entire amount of its insurance coverage. A&P further stipulated that plaintiff would be continued on workers' compensation, and that it would waive its workers' compensation lien, thus allowing plaintiff to keep the entire insurance recovery. The pertinent portion of the stipulation dictated by the IAS Court was that there would be "a waiver of the existing compensation lien" by A&P.

After this settlement, and in order to avoid litigation, A&P/ Crawford, DSS and Beth Abraham tried to work out a further settlement whereby the employer would pay the medical provider all charges to date at the higher workers' compensation rate, and out of these receipts Beth Abraham would reimburse DSS at the lower Medicaid rate it had been paying, thus making everybody whole. This effort was unsuccessful.

At issue in this case is whether A&P's waiver of the "existing" workers' compensation lien should be limited to lost wage payments, or whether it contemplated past medical bills as well. A&P now argues that the stipulation should be interpreted to mean that it waived only its then-existing lien, namely, a claim for recovery of the lost wages it had already paid plaintiff, but not including past medical bills paid by DSS. DSS and Beth Abraham argue[2] that since the responsibility for past medical bills has been properly shifted to the workers' compensation carrier, A&P's waiver included claims to recover that obligation as well.

Plaintiff moved to hold A&P in contempt for refusal to abide by the terms of the settlement, namely, payment of past and continuing medical bills out of workers' compensation funds. After preliminarily denying the drastic remedy of contempt, the IAS Court ruled that A&P's carrier was in fact obligated, under the settlement, to pay for plaintiff's past medical services, at the workers' compensation rate. To accomplish this,

---

2. Even though plaintiff is the nominal respondent on this appeal, he has not appeared. Responding arguments are put forth by nonparties Beth Abraham and the DSS Commissioner, who seek to satisfy their claims from the compensation carrier, rather than out of plaintiff's liability recovery.

Crawford was ordered, *inter alia*, to pay Beth Abraham for those services ($779,325), out of which Beth Abraham would reimburse DSS for $600,516.34 in Medicaid moneys mistakenly received from the agency.

On appeal, A&P challenges the IAS Court's jurisdiction to consider the matter in the first place, in light of the 1994 stipulation of settlement, and argues that plaintiff, DSS and Beth Abraham should be relegated to commencing a plenary action. But absent an express stipulation of discontinuance in the settlement agreement, that settlement does not terminate the action, or the court's exercise of authority to supervise enforcement of the agreement (*Teitelbaum Holdings v Gold*, 48 NY2d 51).

The unique facts of this case, involving a plaintiff very much dependent on the protection of the court, warrant the exercise of continuing jurisdiction until these financial matters have been resolved. And lest there be any doubt, interpretation of the settlement is the function not of an agency such as the WCB, but rather of the court that fashioned that contractual agreement in the first place (*supra*).

A&P's challenge to the standing of nonparty DSS to respond on this appeal has no merit. Aside from the fact that A&P never raised such an objection below, DSS has always had a statutory interest in this case, as a public assistance lienholder under Social Services Law § 104-b (*see, Kidney v Kolmar Labs.*, 68 NY2d 343) and section 369, as an assignee under section 366 (4) (h) (1), or as a subrogee under section 367-a (2) (b). The invitation for DSS to appear and submit papers in these proceedings was well within the discretionary authority of the IAS Court, and its appearance on this appeal is just as warranted.

A&P did object to Beth Abraham's appearance. However, Beth Abraham was in the unique position of having provided the medical care at issue, and also having received the disputed funds therefor. The IAS Court understandably invited Beth Abraham to appear because of the relevant information it could provide in interpreting the settlement agreement. That same material interest in the case warranted Beth Abraham's appearance as a nonparty respondent on this appeal (*New York Trust Co. v Weaver*, 270 App Div 989).

Addressing the merits, A&P/Crawford argues that waiver of its "existing" compensation lien referred only to the $54,000 in lost wages it had been paying to plaintiff, maintaining that it never would have waived its right to contest responsibility for this newly asserted liability—namely, plaintiff's accrued medi-

cal bill for $800,000. This argument must be rejected, primarily because the IAS Court, having presided over the stipulation consummating the settlement negotiations, was in a unique position to construe the intent of the parties in entering into that stipulation. All negotiating parties give up something in the course of reaching a settlement. Plaintiff waived the right to further recovery. Summit Security Services relinquished any contest to a $1 million insurance pay-out. A&P/Crawford waived its right to recover, from the proceeds of plaintiff's liability award, what they had been obligated to pay to that date.

Once the WCB determined, without contest, that plaintiff was entitled to compensation benefits, A&P should have been alerted to its exposure for medical liability from the date of the accident forward. At the very least, A&P should have been aware of the possibility that DSS would bring a plenary action against it for recovery of its Medicaid payments. Indeed, A&P's negotiating posture vis-à-vis DSS and Beth Abraham *subsequent* to the settlement, which included what A&P calls a "damage control" proposal to pay Beth Abraham the $600,000 Medicaid amount for treatment dating back to 1987, is further evidence that the employer was well aware of its responsibility in this matter.

We acknowledge the IAS Court's effort to fashion a novel remedy to this complex problem. However, a hearing should be conducted to verify and establish the amount of the DSS lien against Crawford, which includes Medicaid payments of approximately $600,000 to Beth Abraham and approximately $223,000 to other medical providers. Second, any scheme to reimburse DSS for Medicaid payments should not involve Beth Abraham or, for that matter, other medical care providers. Third, the precise amount that should have been paid to Beth Abraham in workers' compensation benefits is a matter for WCB determination. Accordingly, any additional compensation claims against A&P/Crawford, over and above the Medicaid rate already paid to Beth Abraham or any other providers, should be submitted directly to the WCB for determination, with the cooperation of all interested parties and nonparties. Finally, the order for virtually immediate ("within 10 days") specific payments by Crawford to Beth Abraham contradicted the court's own acknowledgement that any determination as to the rate of reimbursement must be reserved to the WCB (*see*, Workers' Compensation Law § 13 [a]). Concur—Nardelli, J. P., Wallach, Williams and Mazzarelli, JJ.